420 P.2d 11

Gerald HUPPERT and Norma Huppert, husband and wife, and Raymond Vloedman, Plaintiffs-Respondents,

v.

J. T. WOLFORD, d/b/a Wolford Agency, Defendant,

and

Western Casualty & Surety Company, Inc., Defendant-Appellant.

No. 9871.

Supreme Court of Idaho.

Nov. 7, 1966.

Ware, Stellmon & O'Connell, Lewiston, for appellant.

Paul C. Keeton and D. K. Worden, Lewiston, for respondents.

SPEAR, Justice.

This is an action for a declaratory judgment in which the plaintiff sought a determination and adjudication by the trial court of the validity of a policy of insurance allegedly issued by defendant Wolford, together with a determination that appellant Western Casualty & Surety Company, sometimes hereinafter referred to as "Western," was obligated under the policy to expend money in defense of respondent Vloedman in the personal injury and property damage action brought by respondents Huppert against Vloedman resulting from a July 30, 1961 accident, and requesting the award of $500.00 or such other sum as the court would deem reasonable for attorney's fees necessarily incurred by Vloedman in the defense of the Huppert-Vloedman action. From a judgment declaring Vloedman had in full force and effect a contract of insurance with Western covering Vloed-

man's 1955 GMC diesel motor truck at the time of the accident on July 30, 1961, with limits of liability of $50,000 for each person and $100,000 for each occurrence as to bodily injury liability and $10,000 for each occurrence as to property damage liability and further ordering Vloedman was entitled to $500.00 attorney's fees in Idaho County case No. 6597 (Huppert v. Vloedman), Western has appealed, claiming it had not insured Vloedman's truck and had incurred no liability in relation thereto as a result of the actions and representations of its agent, Wolford.

On July 11, 1961, Vloedman entered into an agreement with Clarence McReynolds to haul logs for McReynolds. Vloedman, as a condition precedent to such hauling, was required by McReynolds to have public liability insurance. McReynolds had for some time past procured his insurance through the defendant, Wolford, and some logging trucks owned by McReynolds were covered with public liability insurance issued by Western procured through Wolford. Wolford was engaged in the general insurance business with an office in Grangeville, Idaho since 1945 and was an independent agent for several major insurance companies, including Western, soliciting, selling, writing and delivering health, life, casualty, accident and fire insurance. As agent for Western Wolford took applications for insurance, countersigned policies, delivered policies, collected and remitted premiums, made out accident reports and transmitted claims to the appropriate offices.

Vloedman did not know Wolford but was accompanied by McReynolds on July 11, 1961, to Wolford's office for the purpose of obtaining the necessary insurance on the logging truck. There is considerable conflict in the record with regard to the conversation had between the parties at their meeting at Wolford's office and with regard to the understanding reached between Vloedman and Wolford as agent for Western. Wolford filled out an application form with provision for a 15-day binder on which

he filled in the name of Western Casualty & Surety Co., and which subsequently was signed both by Vloedman and Wolford. Vloedman was given a copy of the "application." The coverage contemplated, as set forth in the application form, provided liability limits of $50,000 for each person and $100,000 for each occurrence as to bodily injury liability and $10,000 for each occurrence as to property damage liability. Vloedman testified there was never any discussion concerning temporary insurance but he informed Wolford that he wanted liability coverage "as of today," and that Wolford replied, "You are covered as of now," and "I will deliver the policy." Wolford accepted a $50.00 down payment on the premium for one year and extended credit for the balance which was to be paid upon the delivery of the policy. Vloedman maintains Wolford did not advise him of any limitation upon his authority as agent and representative for Western to provide the coverage which was sought and which Vloedman believed he had obtained. It is admitted by Vloedman that he did not fully read the application signed by him nor notice the provision for a 15-day binder printed below the heading but explained he saw no need to examine the form for it was his understanding that insurance for his truck had been obtained.

Wolford's testimony directly contradicts that of Vloedman. He testified the only reason he even considered this matter was due to the fact that McReynolds had brought Vloedman to his office. He further testified he told Vloedman he did not have authority to write logging truck insurance, that he did not write it and that Vloedman definitely was not covered simply because an application was made. The $50.00 down payment on the premium is admitted. Wolford explained that he had a lot of fire and automobile insurance with other loggers and that he accepted Vloedman's check largely because of the problem of getting premiums from such customers, and also because if a policy is written and

then sent back for non-payment, he would be responsible for part of the premium.

This testimony is substantially corroborated by the former Ann Hatley who as secretary for Wolford was witness to the meeting with Vloedman and McReynolds. She and Mr. Wolford were married in April, 1965, prior to the commencement of this litigation. McReynolds could not be reached for trial and his testimony was unavailable.

Wolford sent the application to Western via American Agencies, general agent for Western, located in Salt Lake City, Utah, and that office forwarded a memorandum to Wolford on July 13, 1961, stating that logging risks were on the prohibited list and definitely an accommodation which Western preferred not to write. However additional information was requested as to Vloedman's insurance experience for the three years preceding July 11, 1961 with the proviso that American Agencies would at that time forward the application to Western for approval. On the basis of this tentative rejection, Wolford concluded that such insurance could not be obtained through Western. No notice of rejection or refusal was communicated to Vloedman by either Wolford or Western prior to July 30th, the date on which the truck was involved in the accident. Wolford explains that he felt the best thing to do after the rejection was to submit an application to Kolob Corporation, general agent for several other insurance companies, because it took some unusual risks. This he did on July 21, 1961.

When Vloedman visited his office on July 11th, Vloedman's leg was in a cast and Wolford testified since there was no representation that anyone other than the plaintiff was to drive the truck and since it was obvious Vloedman could not drive for some time, he believed he had time to write someone else in an effort to obtain coverage rather than contact Vloedman who lived at Whitebird, Idaho and had no telephone. Wolford additionally stated he had in fact

brought this up when Vloedman came to him for insurance, telling Vloedman he would take the application because he would have time to send such an application in and hear about it since Vloedman was presently incapacitated and unable to drive. Vloedman claims however Wolford must have known that someone other than himself would drive the truck because of his incapacity and his expressed purpose to insure the truck immediately.

The application forwarded to Kolob was returned to Wolford the day after the accident accompanied by a note stating they would accept the logging truck insurance if Vloedman would fill out an application and return it to them. The accident, of course, precluded any acceptance such as would cover any liability resulting from the accident. By check dated August 1, 1961, Wolford attempted to refund the $50.00 down payment made by Vloedman and this check bore the following quotation: "Account 15 day Binder July-11-61 to July 26-61." The explanation again is that a refund was not earlier made since Wolford had hoped to acquire the requested insurance through Kolob. Wolford mailed the check to Vloedman, in care of McReynolds, in an envelope postmarked August 7, 1961. Wolford cannot account for the delay except to attribute it to an oversight on the part of his office. Vloedman did not accept the refund but took the check to his attorney. Subsequently the check was returned to Wolford. Within three days of the accident, Vloedman testified he went to Wolford to report the accident and that at this time Wolford informed him that he had no insurance coverage. Wolford denies that Vloedman ever came to his office to report the accident but admits he heard about the accident over the radio on July 30th, the accident date, or the following morning.

On or about August 21, 1961 counsel for Vloedman forwarded a demand to Wolford to accept liability for damage done to the truck or any other liability that might arise out of the July 30th accident. This demand Wolford rejected through his attorney by letter dated August 26, 1961, which explained that Vloedman had signed merely an application form subject to acceptance by the company to which it was directed, which form contained only a 15-day binder which terminated prior to the date of the accident. Wolford did not report the accident to Western until after the above demand by counsel for Vloedman. This action for a declaratory judgment followed.

The district court determined that plaintiff Vloedman was insured against liability resulting from the July 30th accident. The court in reaching that conclusion found the defendant Western held out J. T. Wolford, d/b/a Wolford Agency as their general local agent; and that on July 11, 1961 when visited by Vloedman for the purpose of obtaining insurance on the logging truck, Wolford was clothed by Western with apparent authority to write insurance upon trucks. The court also found that Wolford represented to Vloedman that he was presently covered by insurance and that the policy would be delivered to him as Vloedman had testified. In view of such representations and in view of the further fact that a down payment was made and accepted upon the premium for a one year policy of insurance and credit given for the balance, the court concluded that plaintiff, Vloedman, was insured for one year, commencing July 11, 1961, or until he received due notice to the contrary. Therefore the provision for a 15-day binder as set forth in the application was never in effect, and the expiration thereof prior to the accident was immaterial.

By its assignments of error and the points and authorities in its opening brief, Western raises four principal issues for disposition in this appeal: (1) the evidence does not sustain the trial court's conclusion that Wolford did in fact issue insurance on Vloedman's truck effective for one year beginning July 11, 1961, with liability provisions as found by the trial court; (2) the evidence did not justify the findings and conclusions by the trial court that Wolford was Western's general agent with apparent

authority to issue the insurance to Vloedman, it being Western's contention that Wolford was merely a soliciting agent without such actual or apparent authority; (3) that plaintiff Vloedman lost his right to maintain this action against Western by reason of laches; and (4) Vloedman's claim for attorney's fees does not come within the purview of I.C. § 41–1839.

Concerning the first contention, the evidence is undisputed that on July 11, 1961, plaintiff Vloedman was the owner of a 1955 GMC diesel motor truck (also known as a short logger) and on that date Vloedman entered into agreement with Clarence McReynolds to haul logs for the latter; that as a condition precedent to such hauling Vloedman was required to secure public liability insurance; and that in the company of McReynolds, all of whose insurance (including logging trucks) was written through Wolford, Vloedman called at Wolford's office for the sole purpose of obtaining the necessary liability insurance. What representations were made by Wolford to Vloedman is disputed. Vloedman testified he informed Wolford he wanted liability coverage "as of today" and that after filling out an application form which was signed by both Wolford and Vloedman, Wolford informed Vloedman, "you are covered as of now" and "I will deliver the policy." On the contrary Wolford testified he informed Vloedman that he did not have authority to write logging insurance and that he definitely was not covered and this was just an application to be accepted or rejected by the insurance company. This is corroborated by Wolford's secretary (his wife at time of trial) who was present at the July 11, 1961, meeting. It is undisputed, however, that at the same time Vloedman made and Wolford accepted a $50.00 down payment on the insurance premium. On this conflicting evidence the trial court found that an oral contract of insurance had been made effective for one year beginning July 11, 1961. Findings made by a trial court where supported by substantial, competent, though conflicting, evidence will not be disturbed

upon appeal. McKenney v. Anselmo, 91 Idaho 118, 416 P.2d 509 (1966); Fairchild v. Mathews, 91 Idaho 1, 415 P.2d 43 (1966); Meridian Bowling Lanes, Inc. v. Brown, 90 Idaho 403, 412 P.2d 586 (1966); Jackson v. Blue Flame Gas Co., 90 Idaho 393, 412 P.2d 418 (1966); Nichols v. Knowles, 87 Idaho 550, 394 P.2d 630; Freedman v. Hendershott, 77 Idaho 213, 290 P.2d 738; Edgeller v. Johnston, 74 Idaho 359, 262 P.2d 1006. Additionally the credibility of witnesses and the weight given their testimony is exclusively within the province of the trial judge. Crenshaw v. Crenshaw, 68 Idaho 470, 199 P.2d 264; In re Odberg's Estate, 67 Idaho 447, 182 P.2d 945; Independence Placer Mining Co. v. Knauss, 32 Idaho 269, 181 P. 701.

The next issue raised by appellant is the authority of Wolford to bind Western on the oral policy found to exist by the trial court and affirmed herein. It must be conceded Wolford had no actual authority to make or issue a policy of insurance on a logging truck, and in fact the evidence is undisputed that since 1960 the issuance or making of such policy was definitely prohibited by instructions, in writing, given Wolford by the general agent (American Agencies, Salt Lake City); and there is no claim by respondents of ratification of unauthorized acts on the part of Wolford by Western or American Agencies. Western considered Wolford a soliciting agent and as such he was required to submit an application for any requested logging truck insurance which, if approved, would result in a policy being issued by the company; so the sole question for determination on this issue is whether Western had clothed Wolford with apparent authority sufficient to bind the company on the basis of the representations and actions of Wolford on July 11, 1961.

The first finding of fact made by the trial court is as follows:

"That the defendant Wolford, from 1945 until 1963, was engaged in the general insurance business in Grangeville, Idaho, soliciting, selling, writing and de-

livering health, life, casualty, accident and fire insurance for and as local general agent for several major insurance companies, including the defendant Western Casualty & Surety Company, Inc. That as such agent for Western Casualty & Surety Company, Inc., he took applications for insurance, countersigned policies, delivered policies, collected and remitted premiums, made out accident reports and transmitted claims to the appropriate offices and was held out by Western Casualty & Surety Company as their general local agent."

The facts recited therein are amply substantiated by the evidence adduced in the trial; and the conclusion that by empowering Wolford with the various and sundry duties, rights and privileges delineated Western held him out as a general local agent, is sustained by I.C. § 41–337, as interpreted in Collard v. Universal Automobile Insurance Co., 55 Idaho 560, 45 P.2d 288. This court in that case held that in view of the legislation providing for the writing of insurance only through licensed agents residing within the state, that an agent of a foreign insurance company who has power to solicit and take applications, collect premiums, and countersign and deliver policies, may bind his principal by an oral contract of insurance. The statutory insurance provisions cited in the Collard case have since been replaced when the legislature revised the state insurance law in 1961, but the present insurance code leaves unchanged the resident agent requirement relied upon in that case. I.C. § 41–337.[1] We find the rule thus stated in

Collard governs the case at bar and supports the conclusion of the district court that Wolford by representations made to Vloedman and by his other actions on July 11, 1961, bound Western by reason of a parol contract of insurance effective on that date. See also Hahn v. National Casualty Co., 64 Idaho 684, 136 P.2d 739.

It is true, as Western contends, that the agent in Collard appeared to be a general agent with the broad power to sell, sign, issue and deliver policies of insurance—much broader powers than given Wolford by Western in the present case. Western justifiably contends that Collard might well have been decided on the single ground that as a general agent it was within his apparent, if not actual or implied, authority to waive the policy provision therein involved. Nevertheless, the principle enunciated by the court we feel is based upon sound reasoning and should be applied to the present case.

Missouri has arrived at the same conclusion in interpreting a similar statute. See Sheets v. Iowa State Insurance Co., 153 Mo.App. 620, 135 S.W. 80 at page 84 (1911), wherein the court stated:

"The meaning of the statute is clear, and one does not have to go far to ascertain the legislative intent that prompted its enactment. Obviously, one of its main purposes was to put a stop to the irritating and unjust practice indulged in by some insurers of adroitly phrasing their agency contracts in a way to bestow general powers on their agents, who come in direct contact with the public, when

1. "41–337. Resident agent, countersignature law.—Except as provided in section 41–338, no authorized insurer shall make, write, place or cause to be made, written or placed, any policy or contract of insurance or indemnity of any kind or character, or a general or floating policy covering risks on property located in Idaho, liability created by or accruing under the laws of this state, or undertakings to be performed in this state, except through its resident insurance agents licensed as provided in this code, who shall countersign all policies or indemnity con-

tracts so issue, and who shall keep a record of the same, containing the usual and customary information concerning the risk undertaken and the full premium paid or to be paid therefor, to the end that the state may receive the taxes required by law to be paid on premiums collected for insurance on property or undertakings located in this state. When two (2) or more insurers issue a single policy of insurance the policy may be countersigned on behalf of all insurers appearing thereon by a licensed agent, resident in this state, of any one such insurer."

such powers relate to benefits flowing to the company, and to invest such agents with no power to represent the company when the benefits of the insured are involved. * * * And the Legislature evidently thought further to discourage them by requiring all contracts of insurance to be made by regularly constituted and lawfully licensed resident agents, who should countersign the policies, so that when the insured received his policy he would know that the local agent who countersigned it possessed the power to make contracts for his company *and to bind it as a general or, as defendant calls it, a recording agent."* (Emphasis supplied.)

It will be noted the court made clear that it did not hold that a foreign insurance company may not employ soliciting agents of limited powers within the state, but held that *countersigning, resident agents are presumed to possess authority to make contracts for their principals.* Missouri has consistently followed this rule. See Chailland v. M. F. A. Mutual Insurance Company, 375 S.W.2d 78 (Mo.1964); McNabb v. Niagara Fire Ins. Co., 224 Mo.App. 396, 22 S.W.2d 364 (1929); Corrigan v. National Motor Underwriters, 222 Mo.App. 113, 1 S.W.2d 845 (1928); Murphy v. Great American Ins. Co., 221 Mo.App. 727, 285 S.W. 772 (1926); Ferguson v. Home Ins. Co. of New York, 208 Mo.App. 422, 236 S.W. 402 (1921); Prichard v. Connecticut Fire Ins. Co., 203 S.W. 223 (Mo.App.1918).

Justification for holding an insurance company bound with regard to the acts and representations of its *local agent* though such acts and representations are beyond the agent's actual or implied authority is found in the fact that such an agent usually represents a company remotely located and by that circumstance is viewed by the community or locale served as having full power and authority respecting insurance procured through him from the company. The Kentucky court of appeals in its decision in Henry Clay Fire Ins. v. Grayson County State Bank, 239 Ky. 239, 39 S.W.2d

482 (1931), (cited in Collard) explains perhaps most concisely this basic consideration. The opinion, 39 S.W.2d at pp. 483–484, quoted with approval from the earlier case of Phoenix Ins. Co. v. Spiers & Thomas, 87 Ky. 285, 8 S.W. 453 (1888), as follows:

" 'The tendency of recent decisions, and we think properly, is to hold the insurer bound by the acts and conduct of the local agent whenever it can be done consistently with the rules of law. The maxim, qui facit per alium facit per se, should apply with peculiar force to the acts of an insurance agent. He usually represents a company remotely located. Its patrons in his vicinity naturally look to him for direction generally as to the insurance obtained through him. He is generally regarded as having full power in reference to it. Being usually the only man upon the ground having anything to do with it, the persons insured in his company, with few, if any, exceptions, would, in the absence of notice that his powers were limited, regard his statement as to any matter relative to such insurance as authoritative, and any notice to him as to it as sufficient. They rarely know anything of the company, or of its officers, who issue the policies, and look to the agent through whom they have obtained the insurance as the complete representative of the company in everything connected with that insurance.' "

This same factor was considered by this court in reaching the decision in the case of Bales v. General Ins. Co. of America, 53 Idaho 327, on pp. 337–338, 24 P.2d 57, when the court noted, citing Hardwick v. State Ins. Co., 20 Or. 547, 26 P. 840 (1891), that " 'Where insurance companies deal with the community through a local agency, persons having transactions with the company are entitled to assume, in the absence of knowledge as to the agent's authority, that the acts and declarations of the agent are as valid as if they proceeded directly from the company. * * *' " See also 16 Appleman, Insurance Law & Practice, § 8672, pp. 75–77 (1944).

Without relying on a statute like I.C. § 41–337, the supreme court of the State of Washington arrived at a strikingly similar conclusion in Fanning v. Guardian Life Insurance Co. of America, 59 Wash.2d 101, 366 P.2d 207 (1961). The court concluded the soliciting agent did have apparent authority to bind the company and approved the following instruction given by the trial court:

" 'An insurance company is bound by all acts, contracts or representations of its agent which are within the scope of his apparent authority, notwithstanding the fact that they may be in violation of private instructions or limitations upon his authority, unless the person with whom the agent is dealing has either actual or constructive knowledge of the agent's limitation of authority.

" 'If you find that Mr. Lester acted in such a way as to lead plaintiff to believe he was protected by the insurance upon payment to Mr. Lester, and if you find that the plaintiff herein acted in good faith and as a reasonable man in assuming that Mr. Lester had authority to sell plaintiff accident insurance protecting the plaintiff from the date that plaintiff made payment to Mr. Lester, and did not have actual or constructive notice that Mr. Lester had limited authority to bind, then your verdict shall be for the plaintiff.' "

In approving this instruction the court cited the Restatement, Agency, 2d § 8 on apparent authority, and quoted from a previous Washington case, Starr v. Mutual Life Ins. Co., 41 Wash. 228, 83 P. 116, 118 (1905), relative to the manner in which insurance companies can adequately protect themselves as follows:

" ' * * * If insurance companies deem it necessary for their protection to limit the operation of their contracts of insurance from the date of issuance of the policy, or from any other date, it is very easy for them to say so and to bring knowledge of that fact home to those with whom they are dealing. In this case, we hold that the receipt given constituted a present contract of insurance, subject to be continued or terminated by the approval or rejection of the application, and that the insured was not affected by any want of authority in the soliciting agent to enter into such a contract, unless notice of such want of authority was brought home to him.' "

We concur with this reasoning.

■■ Thus the conclusion of the trial judge that Wolford as resident agent for Western with the various powers hereinbefore enumerated, was thereby clothed with apparent authority to bind Western on a parol contract of insurance is correct. Of course, if Vloedman had been advised that Wolford was acting outside his actual or implied authority as agent for Western, or should that fact have been apparent to a reasonably prudent man under the circumstances, then no liability could have been incurred for Western. However, the trial court determined, and such finding is supported by competent evidence, that Wolford did not inform Vloedman that he lacked the authority to provide immediate coverage on the logging truck, and no contention is made that Vloedman should have known Wolford lacked such authority.

We hold the second contention or issue raised by appellant is without merit.

Appellant maintains, however, in its third contention on appeal, that any right which may have existed in the plaintiff, Vloedman, was lost by reason of the plaintiff's *laches* in failing to prosecute his claim when first informed that as far as Wolford was concerned no coverage was afforded him. The district court determined that the evidence did not support a claim that the plaintiff had been guilty of laches. Vloedman testified, and the court found, that within three days following the accident Vloedman went to Wolford to report the accident and Wolford told Vloedman he was not covered. On August 21, 1961, Vloedman, through his attorney, forwarded a demand to Wolford to accept liability for damage done to the truck or any other liability that might arise out of the accident of July 30th. By

letter dated August 26, 1961, Wolford through his attorney, denied the demand. Neither Vloedman nor his attorney took any further action until the attempt to intervene appellant after the Huppert damage suit was filed in 1963. The record is silent as to any prior attempt to contact Western Casualty & Surety Company or its Salt Lake general agent, American Agencies.

 Whether or not a party is guilty of laches primarily is a question of fact and therefore its determination is within the province of the trial court. Goldman v. Goldman, 169 Cal.App.2d 103, 336 P.2d 952 (1959); Owens v. Ring, 117 Cal.App.2d 672, 256 P.2d 1040 (1953); Taylor v. Marine Cooks & Stewards Ass'n of Pac. Coast, 117 Cal.App.2d 556, 256 P.2d 595 (1953); Miller v. Busby, 101 Cal.App.2d 83, 224 P.2d 754 (1950). The defense of laches is a creation of equity and is a specie of equitable estoppel. The necessary elements of laches are: (1) defendant's invasion of plaintiff's rights, (2) delay in asserting plaintiff's rights, the plaintiff having had notice and an opportunity to institute a suit, (3) lack of knowledge by defendant that plaintiff would assert his rights, and (4) injury or prejudice to defendant in event relief is accorded to plaintiff or the suit is not held to be barred. Lapse of time, although an important element, is not alone controlling in determining the applicability of the defense of laches, unless the party claiming laches was injured or placed at a disadvantage by such delay. Finucane v. Village of Hayden, 86 Idaho 199, 384 P.2d 236; Grover v. Idaho Public Utilities Commission, 83 Idaho 351, 364 P.2d 167; Despain v. Despain, 78 Idaho 185, 300 P.2d 500; Flora v. Gusman, 76 Idaho 188, 279 P.2d 1067.

 The admitted delay between the demand made upon Wolford and the subsequent attempt to intervene appellant after the Huppert damage suit was filed was not such a delay as to place the appellant at a disadvantage or in a worse position than it would have been in had the action been prosecuted with greater diligence. Vloedman through his attorney gave Wolford notice that he believed himself covered by insurance and Wolford after such demand was made upon him by Vloedman reported the accident to the appellant. Appellant was duly informed of the Huppert damage suit when the unsuccessful attempt to intervene the company was made at the outset of that action. We find no abuse of discretion by the trial judge in denying the defense of laches.

 Western finally contends there is no authority for awarding attorney's fees already incurred by Vloedman in defense of the Huppert-Vloedman action. Although no authority is cited, counsel for Western urges such award does not come within the purview of I.C. § 41–1839. With this it appears respondents agree for there is no mention thereof by way of argument, citation of authorities or otherwise, in their briefs or in their oral argument before the court.

It will be noted that in the findings of fact and judgment entered by the trial court the court found and held that Vloedman did have in full force and effect a contract of insurance with Western covering Vloedman's 1955 GMC diesel motor truck and also "that the limits of liability under said policy of insurance were $50,000 for each person and $100,000 for each occurrence as to bodily injury liability and $10,000 for each occurrence as to property damage liability." There is no finding or conclusion of law or a judgment entered setting forth responsibility on the part of Western to defend any cause of action brought against Vloedman such as that instituted by Hupperts. The $500.00 attorney's fee awarded was for fees incurred by Vloedman for his attorney in defense of Idaho County case No. 6597 (Huppert v. Vloedman) and we agree with appellant that the provisions of I.C. § 41–1839(1),[2]

---

2. "41–1839 Allowance of attorney fees in suits against insurers.—(1) Any insurer issuing any policy, certificate or contract of insurance, surety, guaranty or indem-

do not form a basis for allowance of attorney's fees in this action, at least not at this stage of the proceedings; therefore such allowance should not have been awarded.

The disposition of these four essential issues on appeal make unnecessary any discussion of, or comment upon, appellant's additional assignments of error.

That portion of the judgment declaring a contract of insurance by Vloedman with Western with limits of liability as set forth in the judgment is affirmed. That portion of the judgment awarding Vloedman $500.-00 attorney's fees on account of Idaho County case No. 6597 is reversed. Costs to respondents.

McFADDEN, C. J., and McQUADE, TAYLOR and SMITH, JJ., concur.

nity of any kind or nature whatsoever, which shall fail for a period of thirty (30) days after proof of loss has been furnished as provided in such policy, certificate or contract, to pay to the person entitled thereto the amount justly due under such policy, certificate or contract, shall in any action thereafter brought against the insurer in any court in this state for recovery under the terms of the policy, certificate or contract, pay such further amount as the court shall adjudge reasonable as attorney's fees in such action."