482 P.2d 515

Bertha RUTLEDGE, a widow, Richard Darrell Rutledge, Persis Bertheal Rutledge De Lamare, Patricia Ann Rutledge, and Joy K. Rutledge Frankenstein, Plaintiffs-Respondents,

v.

The STATE of Idaho, et al., Defendant-Appellant.

No. 10784.

Supreme Court of Idaho.

March 12, 1971.

Robert M. Robson, Atty. Gen., and George C. Detweiler, Asst. Atty. Gen., Boise, for appellant.

Hawley, Troxell, Ennis & Hawley, Boise, for respondents.

DONALDSON, Justice.

This is an appeal taken by the State of Idaho (defendant-appellant) from a district court judgment decreeing that plaintiffs-respondents were the owners in fee simple of certain real property which formerly constituted the bed of the Boise River, and that the State of Idaho and all other claimants are without any right whatsoever in such land.

The pertinent facts surrounding this lawsuit are as follows. On February 27, 1969, Bertha Rutledge and her children instituted suit in the district court requesting that title to the land involved be quieted. Bertha Rutledge and the children claim to be the owners in fee simple of the Evergreen Motel property on the west side of Capitol Boulevard (between the Union Pacific Depot and College Boulevard), which she and her husband purchased in 1944 from Mr. Van Lidergraph. Since that time the plaintiffs-respondents have been in continuous possession of the property and have paid taxes on it every year. The State of Idaho claimed in its answer that it was the owner in fee simple of the land in question and held it in trust for the use and benefit of the public since the land was within the bed of the Boise River, which was a navigable river on the date the State of Idaho was admitted to the Union. The record reveals much technical testimony which can be reduced to the following:

(1) The property in question originally constituted part of the river bed of the Boise River.

The trial court determined in its Memorandum Decision that,

(2) The Boise River was in some way diverted or its flow changed and the property in question thereby became exposed.

"* * * the south channel did dry up and the former bed thereof came to be known as the property of the plaintiffs and their predecessors in interest and came to be used as their own by the plaintiffs and their predecessors in interest. The north channel of the Boise River came to be the main and only channel of the river in this locality."

ORIGINAL COURSE

BOISE RIVER — ISLAND — BOISE RIVER

N W E S

MODIFIED (PRESENT) COURSE

BOISE RIVER — FORMER ISLAND — BOISE RIVER

LAND IN QUESTION

[121Z]

(This graphic representation in the Court's opinion facilitates an understanding of the change in course undergone by the Boise River from the early part of the century to the present. It is an undisputed fact that the river did change course. The parties to this lawsuit disagree as to the causes of such change, however, this fact is irrelevant in the Court's decision.)

The trial court then adjudged that the State of Idaho had no right, title, interest, claim or estate whatsoever in the property in question and that the plaintiffs-respondents were the owners of the property in fee simple. The basis for this decision was the fact that after the stream ceased to flow over the land in question, the State of Idaho did nothing to perfect its title to the land and thus the property could be acquired by adverse possession.[1] The State of Idaho has appealed to this Court from the adverse judgment and contends in essence that the State of Idaho owns the beds of its navigable waters and such riv-

---

1. I.C. § 5–202 reads as follows:

"5–202. Actions by state.—The people of this state will not sue any person for or in respect to any real property or the issues or profits thereof, by reason of the right or title of the people to the same, unless:

1. Such right or title shall have accrued within ten years before any action or other proceeding for the same is commenced; or,

2. The people or those from whom they claim, shall have received the rents and profits of such real property, or of some part thereof, within the space of ten years."

erbeds are not subject to sale or other claim, but are held by the State in trust for the public. The State maintains that the beds of navigable waterways were acquired by the State of Idaho as an incident of its sovereignty and they are held in trust for the use and benefit of the people. The principal thrust of the State's argument is that such riverbeds are to be held in trust, regardless of the fact that the waters may have been moved or diverted thus leaving the beds dry.

■ This Court does not agree with the State's contention and hereby affirms the judgment of the district court. There are certain categories of State owned land which are immune from acquisition by adverse possession.[2] However the land herein involved does not fall within them.[3] The trial judge precisely isolated the issue in this case by the following query:

"Does this rule mean then an absolute exclusion for the doctrine of adverse possession or does it merely prohibit adverse possession where the water is still running over or covering the bed in question? *If the stream is no longer there for the benefit of the public, must the land still remain in the state for the benefit of the public?*"[4]

When the reason for holding property in trust for the public benefit ceases, e. g., a

navigable stream drys up or is diverted etc., and it is no longer navigable, it is no longer a unique or special benefit to the general public. It is the same as any other of the State owned lands since it has lost the special characteristic of navigability. Thus the reasons for clothing such property with a protective shield of immunity from acquisition by adverse possession also become meaningless.

Thus this Court concludes that the status of the land in question does not prevent it from being acquired by adverse possession.[5] People v. California Fish Co., 166 Cal. 576, 138 P. 79 (1913). See also, State v. Muncie Pulp Co., 119 Tenn. 47, 104 S.W. 437 (1907).

■ The State contends that the landowners (plaintiffs-respondents) failed to show as an essential element of adverse possession that they paid all state and municipal taxes assessed against the property.[6] However, the record indicates that during the time period that they owned the property, plaintiffs-respondents paid out more than $30,000 in property taxes. It is true that this money was paid to the county rather than the State itself, however, according to the tax collection procedures followed in this State, the counties act as a collecting agency in the collection of taxes for the State and municipality. I.C. § 63–902 provides that,

2. The case of Hellerud v. Hauck, 52 Idaho 226, 13 P.2d 1099 (1932) held there are two categories of land which may not be acquired by adverse possession against the State, viz., land dedicated to a public use and school endowment land.

3. The land in question is not school endowment land and it has long since ceased to be "land dedicated to a public use."

4. Memorandum Decision rendered by the trial judge. (Emphasis supplied.)

5. See F.N. 1.

6. I.C. § 5–210 states:
"5–210. Oral claim—Possession defined—Payment of taxes.—For the purpose of constituting an adverse possession, by a person claiming title not

founded upon a written instrument, judgment or decree, land is deemed to have been possessed and occupied in the following cases only:
1. Where it has been protected by a substantial inclosure.
2. Where it has been usually cultivated or improved.
Provided, however, that in no case shall adverse possession be considered established under the provisions of any sections of this code unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons, their predecessors and grantors, have paid all the taxes, state, county or municipal, which have been levied and assessed upon such land according to law."

"All state taxes must be collected and paid into the county treasury and apportioned to the state fund."

Likewise, I.C. § 63–918 provides that:

"All taxes of every city, town, village, school district or other district or municipality, levied according to law and certified in accordance with the provisions of this act, shall be collected and paid into the county treasury and apportioned to such city, town, village, school district or other district or municipality * * *."

See also, I.C. § 63–1001 et seq.; I.C. § 63–1101 et seq.; I.C. § 63–2104; I.C. § 63–2105. The evidence presented by the landowners is sufficient to establish the payment of taxes as required to sustain their claim pursuant to I.C. § 5–210.

Judgment affirmed. Costs to respondents.

McQUADE, C. J., and McFADDEN, SHEPARD and SPEAR, JJ., concur.