665 P.2d 1060

**Fred H. OSTERLOH and Carolyn Osterloh, husband and wife, Plaintiffs-Respondents,**

v.

**The STATE of Idaho, and all other persons known or unknown claiming any right, title, estate, lien or interest in certain described real estate, Defendants-Appellants.**

No. 14222.

Supreme Court of Idaho.

June 28, 1983.

Archie W. Service, Pocatello, for defendants-appellants.

Steven Ashby Tuft, Burley, and Elliott Lee Pratt, Salt Lake City, Utah, for plaintiffs-respondents.

HUNTLEY, Justice.

The issue before us is whether respondents Fred and Carolyn Osterloh, plaintiffs in the action below, can quiet title to a small piece of property, part of which is being used by appellant State of Idaho's Lava Hot Springs Foundation.[1] The property is located adjacent to the Portneuf River, in the village of Lava Hot Springs, Bannock County. It was part of a larger parcel obtained from the U.S. Government by patent in 1904, by John Hall.

Hall's property, which we will refer to as lot 2, was bordered on the north by the Portneuf River. On the other side of the river was lot 7, owned by the State of Idaho. The river course dividing the state land on the north from lot 2 on the south curved so as to form a "horseshoe bend" creating a small promontory of property which extended north toward lot 7. In 1907 the Portneuf River flooded and water rushed across the southern part of the promontory, cutting a new river bed and making Hall's parcel into a small island. The property continued in that state, surrounded by water, for several years. Then the river gradually assumed a single channel along the southern "cut," leaving the horseshoe loop to dry up. The effect of that river course change was to "move" the disputed parcel to the north side of the river, the side of the state land.

Respondents Osterloh can trace title to the property back to John Hall. Osterlohs obtained title in 1958, the most recent of a series of valid conveyances. In each conveyance the property is described as follows:

"A certain tract of land in the form of an island, formed by the Portneuf River leaving its established channel, and cutting across the lands patented to John Hall in his lifetime, the said island now being surrounded by water flowing through the said channel of said river and the new channel cut through said lands as aforesaid. The said island being situated about 100 feet westerly from the present bridge across said Portneuf River at Center Street, in the Village of Lava Hot Springs, County of Bannock, State of Idaho, and containing .50 acres, more or less."

In 1958, when Osterlohs obtained title, the property was no longer an island. They had it surveyed that year and it is that "metes and bounds" description which defines for the property the Osterlohs claim in this quiet title action.

Osterlohs have paid taxes on the property every year, and for a period of time after they obtained it, they made improvements such as clearing and placing fill dirt on the land. However, after they moved out of the state in 1967, the Foundation began to make substantial improvements on the property. In 1968 the Foundation began excavation for a swimming pool on lot 7. Shortly thereafter, the Foundation dumped fill material on the southernmost part of lot 7, including some of the land which was formerly the island and the old river channel, almost to the edge of the present river channel. The land was levelled, paved, and used as a parking lot. It has since continued in the Foundation's actual possession.

---

1. Osterlohs brought the action in 1976. The district court granted summary judgment in favor of the State of Idaho. Osterlohs appealed and this court held, in *Osterloh v. State,* 100 Idaho 702, 604 P.2d 716 (1979), that issues of fact were involved in the defense of laches, and that summary judgment was therefore improper. The case was remanded, and after trial before a judge, title was quieted in plaintiffs Osterloh.

Osterlohs contend that they are deemed to have possession by virtue of their legal title, pursuant to I.C. § 5–206.[2] The legal title established by Osterlohs at trial, however, applies to an island, the location of which, in terms of the present geography of the area, has not been established. No finding was made by the district court as to whether the Portneuf River is a navigable river, although authority tends to indicate it is.[3] If it is, Osterlohs' title could only include land to the high water mark on the island, the river bed being the property of the state. *Callahan v. Price*, 26 Idaho 745, 146 P. 732 (1915). If it is not, Osterlohs would own to the "thread," or center line of the stream. *Northern Pac. Ry. Co. v. Hirzel*, 29 Idaho 438, 161 P. 854 (1916). In either case, much of the land included in Osterlohs' 1958 survey, which describes the land now claimed, would belong to the state.

■ The record indicates that Osterlohs' 1958 survey followed the high bank, north edge, of the old river course, including in their claimed property the entire river bed area of the original channel. Based on that survey, Osterlohs claim title to a parcel of land over eight tenths of an acre in size. But the size of the island was estimated at only one half an acre, as recited in the original property description. Since they could not have received more inclusive title than that of their transferor, and his predecessors in interest, *Gardner v. Fliegel*, 92 Idaho 767, 450 P.2d 990 (1969), and since the conveyances leading to Osterlohs' title purported to transfer only the island, the burden was on Osterlohs to establish some basis for their claim of title to land not within the boundary of the island. Since they did not do this, their action to quiet title must fail. *See Lisher v. Krasselt*, 94 Idaho 513, 492 P.2d 52 (1972); *Norrie v. Fleming*, 62 Idaho 381, 112 P.2d 482 (1941).

■ Osterlohs' reliance on the principle of avulsion provides no assistance in this matter of their burden of proof. While it is true that a change in a river course amounting to an avulsion will not affect existing property boundaries, *Nesbitt v. Wolfkiel*, 100 Idaho 396, 598 P.2d 1046 (1979), Osterlohs' title to the island was based on a description made after the channel changed. Whatever the boundaries were prior to the flood of 1907, Osterlohs cannot, absent some other proof, claim ownership of anything more than the original island. As to the northern loop of riverbed which had dried up when Osterlohs took title to the island, although it was state land, Osterlohs might have made some claim based on adverse possession. *See Rutledge v. State*, 94 Idaho 121, 482 P.2d 515 (1971). However, Osterloh's claim is based on written title alone, not adverse possession, and the record shows that the foundation has actual possession of much of the property claimed.

Osterlohs failed in their burden of establishing legal title to the property described in their complaint (based on their 1958 survey), and failed to establish a sufficiently clear description of the present location of the land once comprising the island to which they received title; they also failed

---

**2.** I.C. § 5–206 "Constructive Possession.—In every action for recovery of real property, or the possession thereof, a person establishing a legal title to the property is presumed to have been possessed thereof within the time required by law, and the occupation of the property by another person is deemed to have been under and in subordination to the legal title, unless it appear that the property has been held and possessed adversely to such legal title, for five (5) years before the commencement of the action."

**3.** *Morris v. Frandsen*, 101 Idaho 778, 621 P.2d 394 (1981) states:
"One James Rikos owned a tract of land consisting of lots 5 and 6 in Section 22, Township 9 South, Range 38 East, in or near Lava Hot Springs in Bannock County, Idaho. The lots consist of approximately 35 and 15.57 acres, respectively, and are typical of 'government lots' so designated by the U.S. government survey when those surveys encounter a navigable stream such as the Portneuf River."
It is sufficient, for a finding of navigability, that a stream be capable, in its natural condition, of floating sawlogs at periods of high water. *Mashburn v. St. Joe Improvement Co.*, 19 Idaho 30, 113 P. 92 (1910); *United States v. Ladley*, 4 F.Supp. 580 (N.D.Idaho 1933).

to assert any other basis for a claim of ownership of the property in the survey. Accordingly, the district court judgment quieting title to the property described in the 1958 survey in respondents Osterloh is reversed, with leave to reopen for further proceedings to give Osterlohs an opportunity to provide a survey of the property which they might properly claim, consistent with this opinion.

The parties shall bear their respective costs.

DONALDSON, C.J., and BAKES and BISTLINE, JJ., concur.

SHEPARD, J., concurs in the result.