851 P.2d 348

**DEVIL CREEK RANCH, INCORPO-RATED, an Idaho corporation, Plaintiff–Appellant,**

v.

**CEDAR MESA RESERVOIR AND CA-NAL COMPANY, an Idaho corporation, Defendant–Respondent.**

No. 19824.

Supreme Court of Idaho, Boise, January 1993 Term.

April 28, 1993.

Rosholt, Robertson & Tucker, Twin Falls, for plaintiff-appellant. Justin R. Seamons argued.

Coleman, Ritchie & Robertson, Twin Falls, for defendant-respondent. John S. Ritchie argued.

JOHNSON, Justice.

This is a water rights case in which the trial court granted summary judgment dismissing a declaratory judgment action on the basis of laches. We conclude that there is no showing of the prejudice necessary for the application of laches. We also conclude there is no basis to uphold the trial court's dismissal of the action on the alternate basis of res judicata. Therefore, we vacate the summary judgment and remand the case to the trial court for further proceedings.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

In 1886, Jerome Helsley appropriated three cubic feet of water per second (cfs) for irrigation and domestic use from Deadwood Creek, located in Owyhee County. Deadwood Creek is a tributary of the East Fork of the Bruneau River, which is a tributary of the Bruneau River. In 1915, the district court in Owyhee County adjudicated this water right in the name of Helsley's successor, Karl Patrick.

In 1920, the Grand View Irrigation District (the irrigation district) filed an action in district court in Owyhee County (the irrigation district's action) seeking adjudication of its right to divert 150 cfs of water from the Bruneau River with priority as of February 1904. The irrigation district named Patrick as one of the defendants. Patrick was served with the complaint in 1921.

In 1922, the Idaho Farm Development Company (the development company) filed an answer and cross-complaint in the irrigation district's action. The cross-complaint (the development company's action) stated that it applied to the irrigation district and to each and every defendant in the irrigation district's action. The development company's action sought adjudication of the waters of Deadwood Creek and its tributaries and that the rights of the development company to store 6,000 acre feet of water annually from Deadwood Creek, with a priority date of January 29, 1915, and 3,000 acre feet of water annually from Deadwood Creek, with a priority date of November 19, 1915, be declared superior to the rights of the irrigation district and the other defendants in the irrigation district's action. There is nothing in the record of the present case indicating service of the development company's cross-complaint on Patrick or that Patrick filed an answer to the development company's action.

In 1922, a default was entered against Patrick and several other defendants in the irrigation district's action based on their failure to answer the irrigation district's complaint.

In 1925, the irrigation district, the development company, and some other defendants and cross-complainants against whom the district court had not entered default in the irrigation district's action presented a stipulation to the district court authorizing the district court to adjudicate water rights in the Bruneau River, the East Fork of the Bruneau River, Deadwood Creek, and the springs and tributaries of the Bruneau Valley. Although Patrick did not sign the stipulation, the stipulation authorized the district court to enter a decree granting judgment to the parties to the stipulation for the right to use the water of the Bruneau River and its tributaries. The stipulation listed Patrick's water rights with priority as of April 1, 1886.

The stipulation also provided that the development company might divert and impound in storage water from Deadwood Creek, "at all times and at all seasons of the year when by so doing it does not interfere with any prior rights fixed by this decree." The stipulation also permitted the development company to divert and store water from Deadwood Creek in the amounts alleged in its cross-complaint from October 1 to May 15. The stipulation stated that the exercise of these rights by the development company "during said non-irrigation season does not interfere with the rights of any of the parties hereto."

Based on the stipulation, the district court entered a decree (the 1925 decree) determining that the irrigation district had a water right to 150 cfs in the Bruneau River and that the development company had two annual storage rights to the water from Deadwood Creek. The 1925 decree also provided that the development company could store the water of Deadwood Creek in a reservoir from October 1 to May 15 each year (the non-irrigation season), and that the storage of the water would not interfere with the rights of the other parties. The 1925 decree included a declaration of Patrick's water rights contained in the stipulation and granted the development company the storage rights during

the non-irrigation season provided for in the stipulation.

Patrick's current successor is Devil Creek Ranch, Inc. (Devil Creek). The development company's successor is Cedar Mesa Reservoir and Canal Company (Cedar Mesa). Cedar Mesa and its predecessors have continued to store the water during the non-irrigation season since the 1925 decree with one exception. In 1960, Cedar Mesa agreed to allow Patrick and several other water users to divert water two weeks early.

Devil Creek filed this action against Cedar Mesa in January 1991, seeking a declaratory judgment that the 1925 decree was invalid and that Devil Creek was entitled to obtain three cfs of water from Deadwood Creek at any time during the year. Cedar Mesa asserted res judicata, collateral estoppel and estoppel as affirmative defenses and filed a motion to dismiss, arguing that the trial court lacked subject matter jurisdiction and that another action was pending between the same parties for the same cause of action. The trial court ordered Devil Creek to file a summary judgment motion, which it did. Cedar Mesa also requested summary judgment on the grounds of res judicata and estoppel. Before making a decision, the trial court requested briefing on the issue of estoppel by laches. The trial court then denied Devil Creek's motion for summary judgment and granted summary judgment in favor of Cedar Mesa on its defense of laches. Devil Creek appealed.

## II.

### THERE IS NO BASIS TO DETERMINE THE PREJUDICE NECESSARY FOR THE APPLICATION OF LACHES.

■ Devil Creek asserts that the trial court should not have granted summary judgment dismissing its declaratory judgment action, because Cedar Mesa did not establish the element of prejudice necessary to apply the doctrine of laches. We agree.

In *Huppert v. Wolford,* 91 Idaho 249, 420 P.2d 11 (1966), the Court summarized the nature and elements of laches:

The defense of laches is a creation of equity and is a specie of equitable estoppel. The necessary elements of laches are: (1) defendant's invasion of the plaintiff's rights, (2) delay in ascertaining plaintiff's rights, the plaintiff having had notice and an opportunity to institute a suit, (3) lack of knowledge by defendant that plaintiff would assert [plaintiff's] rights, and (4) injury or prejudice to defendant in event relief is accorded to plaintiff or the suit is held not to be barred.

*Id.* at 257, 420 P.2d at 19 (citations omitted).

In *Osterloh v. State,* 100 Idaho 702, 604 P.2d 716 (1979), *appeal after remand,* 105 Idaho 50, 665 P.2d 1060 (1983), the Court overturned a summary judgment granted on the basis of laches and cited *Huppert* for the proposition: "Whether or not a party is guilty of laches ordinarily is a question of fact." *Id.* at 703, 604 P.2d at 717. The Court concluded that the defense of laches "ordinarily requires a thorough presentation of all the relevant facts and is a factual determination." *Id.*

In *Bowler v. Board of Trustees,* 101 Idaho 537, 617 P.2d 841 (1980), the Court overturned a summary judgment based on laches and noted: "Laches ... requires a showing of prejudice to the party assertion it.... It would be an unusual case where such a defense as laches could be resolved on summary judgment, raising as it does complex factual issues." *Id.* at 544 n. 3, 617 P.2d at 848 n. 3.

In this case, Devil Creek did not challenge the 1925 decree until 1991. For the purpose of the trial court's consideration of the summary judgment on the issue of laches, Devil Creek accepted that for sixty-six years, with the exception of 1960, Cedar Mesa has been allowed to store the water decreed to it during the non-irrigation season.

The only evidence submitted by Cedar Mesa in support of summary judgment on the issue of laches was an affidavit of its

watermaster and an affidavit of a shareholder, director, and officer of the corporation. The affidavit of the watermaster recites the allocation of water by Cedar Mesa to its shareholders during the irrigation seasons for several years, the amount of water stored in Cedar Mesa's reservoir during certain years, and the transportation of excess water in certain years. The affidavit of the shareholder, director, and officer recites the amount of water per acre each year that is adequate for the operation of his farm, the amount of water delivered to Cedar Mesa's shareholders during certain years, and the circumstances concerning the delivery of water by Cedar Mesa to Patrick and others in 1960 during the period from May 1 to May 15.

Cedar Mesa contends that allowing Devil Creek to pursue its declaratory judgment action "would result in great injury and prejudice to Cedar Mesa in that it would greatly limit its right to store water for the benefit of its stockholders under the Decree which has been in operation for sixty-six (66) years."

This is an insufficient basis for summary judgment on the issue of laches. The affidavits offer no evidence that Cedar Mesa or its shareholders have been prejudiced by the delay in Devil Creek's assertion of its rights. The fact that Cedar Mesa and its shareholders have had the advantage of storing the water does not establish prejudice. It only establishes that Cedar Mesa and its shareholders have had the use of water to which they may or may not be entitled. This does not constitute the necessary prejudice for the application of laches.

### III.

### THE 1925 DECREE DOES NOT BAR DEVIL CREEK'S ACTION UNDER THE DOCTRINE OF RES JUDICATA (CLAIM PRECLUSION).

Cedar Mesa asserts that we can uphold the summary judgment of the trial court on the ground that the 1925 decree bars Devil Creek's action under the doctrine of res judicata (claim preclusion). We disagree.

Although Cedar Mesa did present the issue of res judicata to the trial court as a basis for dismissing Devil Creek's action, the trial court did not address this issue. Nevertheless, res judicata (claim preclusion) would be a basis for us to uphold the trial court's summary judgment, if application of res judicata (claim preclusion) is appropriate. In this case, however, it is not.

If the claim in question was asserted or could have been asserted in a lawsuit resulting in final judgment, the doctrine of res judicata (claim preclusion) bars the presentation of the claim in a subsequent lawsuit between the same parties or their privies. *Foster v. City of St. Anthony*, 122 Idaho 883, 888, 841 P.2d 413, 418 (1992). The problem with applying res judicata (claim preclusion) in this case, is that Devil Creek's predecessor in interest, Patrick, was not a party to the development company's action. There is no record in this case that Patrick was served with or answered the cross-complaint, nor was he a party to the stipulation. Res judicata (claim preclusion), therefore, does not apply.

### IV.

### CONCLUSION.

We vacate the summary judgment and remand the case for further proceedings.

We award Devil Creek costs on appeal.

Devil Creek did not request attorney fees on appeal.

McDEVITT, C.J., BISTLINE and TROUT, JJ., and REINHARDT, J., Pro Tem.