690 P.2d 944

**Joseph L. LUPIS and Sara Jean Lupis, husband and wife, Plaintiffs-Appellants,**

v.

**PEOPLES MORTGAGE COMPANY, a Washington corporation, Defendant-Respondent.**

No. 14601.

Court of Appeals of Idaho.

Oct. 30, 1984.

Randall C. Fredricks, Kim B. Loveland, Clemons, Cosho & Humphrey, P.A., Boise, for plaintiffs-appellants.

Mary S. Hobson, Eberle, Berlin, Kading, Turnbow & Gillespie, Chartered, Boise, for defendant-respondent.

BURNETT, Judge.

This appeal presents questions of estoppel and contract interpretation. The issues are framed by a transaction in which a commercial lender, Peoples Mortgage Company, made a real estate loan to Joseph and Sara Jean Lupis, for the purchase of a house. The loan was evidenced by a promissory note and secured by a deed of trust on the purchased property. As explained in greater detail below, the deed of trust was supplemented by other documents containing additional covenants by the borrowers. When the borrowers breached one of those covenants, the lender gave notice of intent to commence nonjudicial foreclosure proceedings. The borrowers sued to enjoin the proceedings but a district court entered summary judgment in favor of the lender. We affirm.

## I

On review of a summary judgment, our task is to determine whether there exist genuine issues of material fact and, if not, whether the prevailing party was entitled to judgment as a matter of law. I.R.C.P. 56(c). In this case, the facts essential to our opinion are undisputed.

The loan in question was the product of a government program designed to assist low-income persons in obtaining home loans from commercial lenders. Under this program, administered in our state by the Idaho Housing Agency, qualified borrowers could receive commercial loans carrying interest rates below prevailing market rates. After closing this type of loan, the lender ordinarily would "sell" it to the agency. In contemplation of such a sale, the lender would require the borrowers to sign an addendum to the customary deed of trust. This addendum, furnished by the agency, provided that the lender or its assignee would be entitled to accelerate all payments due under the note and to exercise any remedy allowed by law, including foreclosure of the deed of trust, if the borrowers sold, rented or "fail[ed] to occupy the [p]roperty as [their] permanent and primary residence." This additional cove-

nant was modified in part by an attached "Certificate of Compliance" which recited that the borrowers could rent the dwelling if they obtained approval of the agency.

In the present case, these documents were signed, the loan was closed, and the borrowers purchased a house. However, the loan was not presented by the lender to the agency for purchase until several months had elapsed. During that period the borrowers made some late payments. The agency declined to purchase the loan until a better payment record had been established. Before that objective could be attained, the circumstances of the lender and of the borrowers changed. The lender ceased doing business in Idaho and the agency terminated its commitment to buy loans from the lender. The borrowers continued to encounter financial difficulty and the husband left Idaho in search of better employment opportunities. The wife later followed; but prior to her departure, she listed the house for sale with a realtor. She also contacted the housing agency to request approval for renting the home until it was sold. She then learned, for the first time, that the agency had not purchased the loan. When she made a similar request to the lender, it was denied. Upon the wife's departure from Idaho the lender, invoking the supplemental covenant that the borrowers occupy the property as their "permanent and primary residence," served notice of a breach. This lawsuit followed.

## II

The parties do not appear to dispute the scope of documents comprising the contract between them. Both the lender and the borrowers have invited our attention not only to the note and deed of trust but also to the addendum and the "Certificate of Compliance." Although the latter documents were furnished by the housing agency, it is obvious that but for the execution of these documents, the loan would not have been made at all—or, at least, it would not have been made at such a low interest rate. We accept the parties' characterization of their contract as including

all of the documents. The documents, taken together, make it clear that the borrowers convenanted to occupy the property as their permanent and primary residence, upon penalty of being held in breach for failure to do so.

### A

The borrowers have argued that although the agency documents are part of the contract, the lender should be estopped to rely upon the supplemental covenants contained in them. This argument is predicated upon the fact that the borrowers did not learn of the agency's refusal to purchase the loan until a request was made for permission to rent the premises. The borrowers urge that if they had known the loan might not be purchased, they would have made more timely payments and their desire to move from the house without incurring an acceleration of the debt might have been viewed more sympathetically by the agency than by the disgruntled lender. We believe the borrowers have failed to make a case for estoppel against the lender.

 Equitable estoppel requires, among other elements, a false representation or concealment of a material fact with intent that another party rely and act upon it to his detriment. *Idaho Title Company v. American States Insurance,* 96 Idaho 465, 531 P.2d 227 (1975). In the present case, the borrowers implicitly suggest the lenders had a duty to inform them that late payments could lead to the agency's refusal to purchase the loan. Assuming, without deciding, that such a duty existed, there still is no factual showing that the lender's concealment of this "material fact" was accompanied by any intent that the borrowers act to their detriment by making untimely payments. It was in no one's interest—least of all the lender's—for a record of late payments to interfere with purchase of the loan. The record discloses that the lender frequently urged the borrowers to make prompt and timely payments.

 Estoppel of another form, known as quasi estoppel, may arise when a party who has a duty to speak fails to do so and thereby produces an advantage for himself, or a disadvantage for someone else, which is unconscionable. *See, e.g., KTVB, Inc. v. Boise City,* 94 Idaho 279, 486 P.2d 992 (1971). In this case, even if we assume that the lender had a duty to speak, there is no factual showing that the lender obtained any advantage by failing to do so. Rather, the lender found itself burdened with a loan at unfavorable interest rates. The lender's failure to speak may have produced a disadvantage for the borrowers, but we are not persuaded that the disadvantage was unconscionable. The borrowers knew that their payments were to be made on time. They knew when and where to make those payments. The lender did not attempt to use late payments as a basis for declaring a breach and seeking to foreclose the deed of trust. The breach arose from the borrowers' change of residence. Therefore, the borrowers' asserted disadvantage simply is that their payment record caused the loan to stay with an unhappy lender who chose, when the housing agency might not have chosen, to enforce the "permanent and primary residence" covenant. In our view, this disadvantage is so remote from the lender's purported violation of a duty to speak, and so closely related to the borrowers' own conduct, that the ultimate result cannot be deemed unconscionable.

### B

 The borrowers also have argued that the lender acted unreasonably by refusing to give permission for the house to be rented. They rely upon the "Certificate of Compliance," which makes approval of rental arrangements a matter of discretion. The borrowers contend that such discretion embodies a requirement to act reasonably.

This argument may be meritorious, as far as it goes. Idaho courts have held that where a party's right to sell, lease or sublease real property is conditioned upon the consent of another party, such consent may

not be withheld unreasonably. *See, e.g., Cheney v. Jemmett,* 107 Idaho 829, 693 P.2d 1031 (slip op., Oct. 15, 1984); *Funk v. Funk,* 102 Idaho 521, 633 P.2d 586 (1981); *Fahrenwald v. LaBonte,* 103 Idaho 751, 653 P.2d 806 (Ct.App.1982). However, this rule of case law does not reach the merits of the instant appeal. The gravamen of the lawsuit is the lender's right to foreclose, not the borrowers' right to rent the property. The lender did not declare a breach for violation of the rental restriction. Indeed, the record does not make clear whether any such violation actually occurred. Rather, the lender's declaration of breach was explicitly grounded upon a violation of the "permanent and primary residence" requirement.

As noted above, this requirement was imposed by the addendum to the deed of trust. The "Certificate of Compliance" softened the addendum as to rental of the property, allowing the premises to be rented if the lease were approved. But the certificate made no provision for obtaining consent to a change in permanent residence. Absent such a provision, Idaho case law concerning the unreasonable withholding of consent does not apply.

It might be argued that the right to rent and the right to change permanent residence are coextensive. But we believe they are distinguishable. The documents in this case draw such a distinction. The borrowers could have sought approval to rent the property during a period of temporary absence from the home, and such a request properly would have invoked the discretionary power of consent. However, here the borrowers' absence from the home was due to a change of permanent residence—a breach *per se* of the supplemented deed of trust.

It may be unfortunate that the supplementary documents did not provide for both rental and change of permanent residence to be the subjects of discretionary approval. However, the documents are plain and unambiguous. Absent fraud or overreaching—neither of which has been shown here—we cannot modify the express terms of a contract upon which competent parties have agreed. *E.g., Miller v. Miller,* 88 Idaho 57, 396 P.2d 476 (1964).

We have examined the borrowers' other contentions of error and we find them to be unpersuasive. The district court's order granting summary judgment in favor of the lender is affirmed. Attorney fees on appeal have not been requested by the lender, and no such award is made. Costs to respondent, Peoples Mortgage.

WALTERS, C.J., and SWANSTROM, J., concur.