48 P.3d 1241

G. Matthew THOMAS, in his capacity as Personal Representative of the Estate of Daniel A. Thomas, Plaintiff–Appellant,

v.

ARKOOSH PRODUCE, INC., an Idaho corporation, First Security Bank, N.A., a Federally Chartered Bank in good standing in the State of Idaho, headquartered in Salt Lake City, Utah; Life Investors Insurance Company of America, an Iowa corporation; Rain For Rent, Inc., an Arizona corporation; and John Does 1–10, Jane Does 1–10 and Corporations XXX–XYZ consisting of All Other Persons and Entities Claiming Any Right, Title or Interest In or To The Real Property which is the Subject of This Action, Defendants–Respondents.

Arkoosh Produce, Inc., an Idaho corporation, Counterclaimant,

v.

G. Matthew Thomas, individually and in his capacity as Personal Representative of the Estate of Daniel A. Thomas, Deceased, Counterdefendant.

No. 27066.

Supreme Court of Idaho, Boise, March 2002, Term.

June 5, 2002.

Givens Pursley, LLC, Boise, for appellant. David R. Lombardi argued.

Arkoosh & James, PLLC, Gooding, for respondent Arkoosh Produce, Inc.

Stoel Rives, LLP, Boise, for respondent LIIC. Dale G. Higer argued.

TROUT, Chief Justice.

## I. NATURE OF THE CASE

This is an appeal by Matthew Thomas as a personal representative of the Estate of Daniel Thomas (Estate) from a court trial in which the district judge found in favor of the Estate on a promissory note, but declined to award prejudgment interest based on equitable defenses. We reverse and remand for further proceedings.

## II. FACTUAL AND PROCEDURAL HISTORY

In 1988, Greenhorn Farms, which was an entity owned by brothers Tom Arkoosh ("Tom") and Jim Arkoosh ("Jim") became involved in a dispute with J.R. Simplot Co. ("Simplot") over the amount charged by Simplot for fertilizer. Arkoosh Produce, Inc. ("API") gave Simplot a real estate mortgage on API's potato processing plant in Gooding County, Idaho for $1,078,802.09 to secure the disputed debt. Tom is also legal counsel for ("API") and Jim is API's president and general manager. Both Tom and Jim are shareholders in API as well.

On June 23, 1989, Daniel Thomas ("Thomas") loaned $112,500.00 to Greenhorn Farms, and he made a second loan to Greenhorn Farms on January 17, 1990, in the amount of $150,000. Both loans, memorialized in promissory notes, were for the purpose of constructing a french-fry plant and were guaranteed by API and Arkoosh family members.

On February 14, 1991, Greenhorn Farms sought Chapter 11 bankruptcy protection. On October 25, 1991, Thomas filed a complaint in Gooding County, Idaho, against the guarantors of his promissory notes, including API and individual members of the Arkoosh family. On December 20, 1991, Greenhorn Farms and API filed a complaint in the United States District Court for the District of Idaho against Simplot regarding the dispute over the alleged fertilizer debt, and API escrowed about $500,000 to pay the debt if necessary.

In 1992, the guarantors of the promissory notes reached a settlement agreement to resolve the debts owed Thomas for $250,000. API further agreed under the bankruptcy plan to assume the assets and the liabilities of Greenhorn Farms, including the Thomas debt. The settlement also stipulated that ninety-six monthly payments in the amount of $3,793.54 would be paid, but they were not due, and interest at a rate of ten percent per year, would not begin to accumulate until the

conclusion of the pending federal Simplot litigation or December 31, 2007, whichever occurred first. The settlement debt was secured by a junior mortgage on the same property as the Simplot mortgage and other liens.

On December 22, 1994, Simplot filed a state court lawsuit to foreclose on its mortgage against the property in Gooding County, Idaho. The parties, pursuant to stipulation, dismissed the federal court litigation on March 27, 1995. API did not notify Thomas of the settlement, which triggered its duty to begin making payments to Thomas, and the accumulation of interest on the note. Thomas did not contact API either regarding the debt, but it is not clear whether Thomas was aware the federal Simplot litigation had settled. API attempted to record a release of the Simplot mortgage on March 13, 1995, but the release erroneously referred to an instrument number other than the Simplot mortgage. API did not file a release referencing the correct instrument number of the Simplot mortgage until October 21, 1998.

In the meantime, API did not make any payments on the Thomas debt, but instead used the money to make improvements on API's plant facilities and for working capital. In 1995, Thomas instructed his accountant to file an amended 1993 tax return, which included a deduction of the debt as a non-business bad debt from which Thomas received tax benefits.

In 1995, an Internal Revenue Service ("IRS") agent audited Thomas' amended 1993 tax return. The IRS agent conducted a factual investigation in which he spoke to both Jim and Tom on the telephone regarding the debt. The IRS agent eventually allowed the write-off.

On May 14, 1996, Thomas passed away and thereafter Matthew Thomas ("Matthew"), the decedent's brother, was appointed as the personal representative of Thomas' estate. Matthew decided not to list the API debt on the estate's inventory because he believed the debt was worthless, and by not claiming it the Estate's tax obligation was decreased.

In October of 1998, API contacted the Estate and asked that the mortgage securing the debt be removed from the property so API could secure a $2,000,000.00 loan from Aegon/Life Investors Insurance Company of America ("LIIC"), which sought a mortgage on the property to secure the loan and refused to close if the encumbrances were not removed.[1] API was able to obtain releases for other encumbrances, including the Simplot mortgage, but Matthew, on behalf of the Estate, refused to release the mortgage, responding through counsel that there was no evidence Thomas had released or forgiven the debt. On December 4, 1998, the Estate demanded payment of $183,000 in delinquent payments, and when that was not paid, sent a notice of acceleration demanding $343,000 in principle, interest and attorney's fees. API did not make the payment and the Estate proceeded to foreclose on the mortgage.

On March 12, 1999, the Estate filed suit in the 5th Judicial District court in Gooding County for the principal amount of $250,000.00 plus interest, under the terms of the note. API filed an answer and counterclaims for slander of title, statutory failure to release a mortgage, and quiet title. API conceded the Estate had proven a prima facie case that the debt was owing, but it asserted the equitable affirmative defense of quasi-estoppel.

Thereafter, a court trial was held and upon stipulation of the parties, API presented its evidence of quasi-estoppel at the beginning of the trial. At the conclusion of API's evidence, the Estate brought an I.R.C.P. 41(b) motion to dismiss API's counterclaims. The Estate also argued that the defense of laches barred API's claims. At that point, although not pleaded or previously asserted, API asserted that laches barred the Estate's collection of the debt. The trial judge denied the Rule 41(b) motion and the Estate presented its evidence.

At the conclusion of the trial, the trial judge entered his decision, dismissing API's counterclaims and holding that API owed the

---

1. LIIC apparently later closed the deal and became a junior lien holder to the Estate's mortgage on the property.

Estate the full principal amount of the note, $250,000, but denying the Estate $178,000 in prejudgment interest based on equitable defenses of quasi-estoppel and laches. Shortly thereafter, API filed bankruptcy but the bankruptcy court granted relief from the stay for the Estate to pursue this appeal. The Estate appealed to this Court the trial judge's ruling that it was not entitled to prejudgment interest. API did not file a response brief, but LIIC, which is a junior mortgage holder, did. API did submit a letter to this Court, stating that it concurred with the brief filed by LIIC.

## III. STANDARD OF REVIEW

 This Court exercises free review over the lower court's conclusions of law "to determine whether the court correctly stated the applicable law, and whether the conclusions are sustained by the facts found." *Nampa and Meridian Irrigation Dist. v. Washington Federal Savings*, 135 Idaho 518, 521, 20 P.3d 702, 705 (2001) (citation omitted). The standard of review of a trial court's findings of fact is set forth in I.R.C.P. 52(a). *Williamson v. City of McCall*, 135 Idaho 452, 455, 19 P.3d 766, 769 (citing I.R.C.P. 52(a)). I.R.C.P. 52(a) provides in pertinent part:

> In all actions tried upon the facts without a jury … the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment. Findings of fact shall not be set aside unless clearly erroneous. In the application of this principle regard shall be given to the special opportunity of the trial court to judge the credibility of those witnesses that appear before it.

*Id.* (quoting I.R.C.P. 52(a)). "In determining whether a finding is clearly erroneous this Court does not weigh the evidence as the district court did. The Court inquires whether the findings of fact are supported by substantial and competent evidence." *Id.* (citation omitted). "This Court will not substitute its view of the facts for the view of the district judge." *Id.* (citation omitted). "Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely

upon it in determining whether a disputed point of fact has been proven." *Id.*

 Admission of hearsay evidence under an exception is reviewed for abuse of discretion. *State v. Moore*, 131 Idaho 814, 822, 965 P.2d 174, 182 (1998) (citing *State v. Zimmerman*, 121 Idaho 971, 829 P.2d 861 (1992)). The district court's choice of remedy is also reviewed under an abuse of discretion standard. *Nelson v. Big Lost River Irrigation Dist.*, 133 Idaho 139, 141, 983 P.2d 212, 214 (1999). Whether the trial court abused its discretion is determined under a three step analysis: "(1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason." *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

## IV. DISCUSSION

### A. Evidentiary Rulings

#### 1. Hearsay

 Admission of testimony by a trial court is reviewed for an abuse of discretion. *State v. Zimmerman*, 121 Idaho 971, 829 P.2d 861 (1992). " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." I.R.E. 801(c). Hearsay is not admissible at trial unless it falls under a recognized exception. I.R.E. 802.

The Estate objected and filed a motion to exclude Tom and Jim's testimony of what the IRS agent said to them during a telephone conversation. The trial court denied the Estate's motion to exclude the testimony, but limited admission of the testimony for purposes of showing notice to API, not for the truth of the statements. Jim testified the IRS agent said, "Thomas says he is not going to collect the debt." Jim testified, "I never did believe [Thomas] was going to collect the note. [The conversation with the IRS agent] confirmed it." Tom testified that he believed

the debt was forgiven, "[p]artially from what [the IRS agent] told [him] and partially from other facts that [he] knew."

The trial judge did not err in admitting the disputed testimony for the purpose of notice only, not for the truth of the matter asserted. *See Lunders v. Snyder,* 131 Idaho 689, 698, 963 P.2d 372, 381 (1998). Jim and Tom's testimony of what the IRS agent told them Thomas said, of course, is hearsay within hearsay (both Thomas' and the IRS agent's), and was properly excluded by the trial judge for the truthfulness of the matters asserted.

### 2. Speculation

The Estate asserts there is insufficient evidence to establish certain elements of the equitable defenses applied by the trial judge. Specifically, the Estate argues the only evidence that Thomas had notice payment was due under the notes, was the testimony of Tom during a brief conversation between Thomas and himself. Tom testified that in 1995, he saw Thomas at the Piper Pub and Thomas said, "I heard you settled with Simplot." Tom testified, "I told him 'yes we did.' "

■ The Estate also argues it is mere speculation that Thomas intended, or API believed that Thomas intended, to forgive the note when he took the bad debt tax deduction. Tom and Jim testified, as quoted above, that they had a telephone conversation with the IRS agent who was auditing Thomas and based on the conversation, they believed Thomas had forgiven the debt. The Estate characterizes this testimony as self-serving, but it is the trial court's responsibility to determine credibility of witnesses and inferences to be drawn from evidence. *Eliopulos v. Kondo Farms, Inc.,* 102 Idaho 915, 919, 643 P.2d 1085, 1089 (Ct.App.1982).

"There is no sure way to distinguish between a legitimate inference to which a party is entitled and an unreasonable one which he is not." *Owen v. Burcham,* 100 Idaho 441, 448, 599 P.2d 1012, 1019 (1979) (citations omitted). "It is well established [, however,] that an inference would be unreasonable if it would permit a jury to base its verdict on mere speculation and conjecture." *Id.* (citations omitted). We find no error in the admission of the testimony, but we do find error in the conclusions drawn from the testimony by the district judge, as set forth below.

### B. Quasi-estoppel

#### 1. Overview and Elements

■ "[T]he doctrine of quasi-estoppel requires that the offending party must have gained some advantage or caused a disadvantage to the party seeking estoppel; induced the party seeking estoppel to change its position to its detriment; and, it must be unconscionable to allow the offending party to maintain a position which is inconsistent from a position from which it has already derived a benefit." *City of Sandpoint v. Sandpoint Independent Highway Dist.,* 126 Idaho 145, 151, 879 P.2d 1078, 1084 (1994) (citing *Tommerup v. Albertson's, Inc.,* 101 Idaho 1, 6, 607 P.2d 1055, 1060 (1980)). This Court has also written that "[q]uasi-estoppel is essentially a last-gasp theory under which a defendant who can point to no specific detrimental reliance due to plaintiffs' conduct may still assert that plaintiffs are estopped from asserting allegedly contrary positions where it would be unconscionable for them to do so." *Schoonover v. Bonner County,* 113 Idaho 916, 919, 750 P.2d 95, 99 (1988). "The doctrine classified as quasi-estoppel has its basis in election, ratification, affirmance, acquiescence, or acceptance of benefits; and the principle precludes a party from asserting to another's disadvantage, a right inconsistent with a position previously taken by him." *Id.*

■ Quasi-estoppel, however, is a broadly remedial doctrine, often applied ad hoc to specific fact patterns. *Keesee v. Fetzek,* 111 Idaho 360, 362, 723 P.2d 904, 906 (Ct.App. 1986). Quasi-estoppel, unlike equitable estoppel, does not require misrepresentation by one party or actual reliance by the other. *Id.* (citing *Evans v. Idaho State Tax Commission,* 97 Idaho 148, 540 P.2d 810 (1975)); *see also Schiewe v. Farwell,* 125 Idaho 46, 49, 867 P.2d 920, 923 (1995) ("The doctrine of quasi-estoppel is distinguishable from equitable estoppel in that no concealment or misrepresentation of existing facts on the one side, nor ignorance or reliance on the other, is a necessary ingredient.").

### 2. Inconsistent Position

Taking the last element as articulated in *Sandpoint* first, the trial court found that Thomas' position in believing the debt was worthless and uncollectable was inconsistent with the Estate's later position in attempting to collect the debt. LIIC asserts this finding is supported by substantial and competent evidence in the record. First, it argues, Thomas' 1993 amended tax return showing the $260,000 bad debt deduction was admitted into evidence. LIIC also argues that Tom's testimony of his conversation with Thomas at the Piper Pub, along with the fact that Thomas was a principal creditor in the Greenhorn bankruptcy and was familiar with the status of the Simplot litigation, even attending some of the Simplot settlement negotiations, shows that Thomas had knowledge the payments were due under the note, but he did not attempt to collect on it, which is inconsistent with the Estate's subsequent attempts at collection.

Conversely, the Estate argues that Thomas' position was never inconsistent with his intent to collect the debt. It asserts that other than silence, Thomas did not ever evidence his intent to forgive the debt, but rather, taking the bad debt deduction and later attempting to collect the debt, is simply different business judgments made at two different times. The Estate notes that the Tax Code specifically provides:

(1) the taxpayer's subjective intent to forgive a debt has no bearing whatsoever on whether a taxpayer is entitled to a bad debt deduction, a bad debt deduction is available only if the debt is "objectively worthless"; and

(2) if a bad debt written off as a bad debt deduction later becomes collectable, the collected amount is taxable as income at the time of collection.

28 U.S.C. § 166.

As the Estate points out, these provisions indicate that taking a bad debt deduction, in itself, is not inconsistent with a later attempt to collect the debt. Thus, other than silence, the only evidence in the record that Thomas intended to forgive the debt, is the testimony of Jim and Tom that the IRS agent told them that Thomas intended to do so. As noted above, however, that testimony was correctly admitted by the trial judge as evidence of notice to API only. The testimony was objected to, and was correctly found to be inadmissible hearsay if offered to prove the truth of the matter asserted—that Thomas had subjectively decided to forgive the debt. Therefore, there is no evidence in the record of inconsistent conduct by the party against whom estoppel is sought, only silence, and quasi-estoppel should not have applied to the present dispute.

Silence generally cannot be relied on to support estoppel. *See French v. Sorensen,* 113 Idaho 950, 958, 751 P.2d 98, 106 (1988) overruled on other grounds by *Cardenas v. Kurpjuweit,* 116 Idaho 739, 779 P.2d 414 (1989). The Court of Appeals has held that "quasi-estoppel may arise when a party who has a duty to speak fails to do so and thereby produces an advantage for himself, or a disadvantage for someone else, which is unconscionable." *Lupis v. Peoples Mortg. Co.,* 107 Idaho 489, 491, 690 P.2d 944, 946 (1984). There is no evidence in the record, however, that Thomas had a duty to speak. In fact, the note itself specifically waives demand, presentment, notice of non-payment, and notice of dishonor. Therefore, there is not substantial and competent evidence in the record that Thomas or the Estate acted inconsistently.

As an affirmative defense, the burden is on API to prove the elements of quasi-estoppel by a preponderance of the evidence. Because we determined that API failed to prove that Thomas or the Estate acted inconsistently, we need not reach the other elements of this defense and therefore, reverse the district judge on this issue.

### C. Laches

#### 1. Waiver of this Defense

The Estate asserts that API waived the defense of laches by not raising it in the pleadings and failing to assert it until the second day of trial. I.R.C.P. 15(b) provides:

Rule 15(b) Amendments to Conform to the Evidence. When issues not raised by the

pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

This Court has addressed this rule in the past noting that, "I.R.C.P. 15(b) provides that a motion to amend pleadings to conform to the evidence should be granted '[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties ....'" *Smith v. King,* 100 Idaho 331, 335, 597 P.2d 217, 221 (1979) (ellipses and brackets in original). "The formality of amendment of the pleadings is not necessary if the court concludes that the issues were, in fact, so tried." *Id.* "We hold that the determination of whether an issue has been so tried is within the discretion of the trial court and such determination will only be reversed when that discretion has been abused."

In the present dispute, the trial court did not abuse its discretion in ruling that API could assert the defense of laches, despite not being formally pled. The Estate cites *Keller Lorenz Co. v. Insurance Associates Corp.,* 98 Idaho 678, 682, 570 P.2d 1366, 1370 (1977), for the proposition that the district judge's ruling was in error. In *Keller,* however, this Court simply upheld the trial judge's ruling, denying consideration of an affirmative defense because it had not been pled, and thus it would have prejudiced the plaintiffs by not allowing them to prepare. Holding that the trial judge did not abuse his

discretion in excluding the defense, as we did in *Keller,* is a different matter than holding that he abused his discretion in allowing the defense, as the Estate asks us to do in the instant case.

The record demonstrates that the trial judge recognized the issue as one of discretion. Moreover, although quasi-estoppel and laches are not the same defense, delay in assertion of the Estate's rights is an important part of both. In addition, the Estate had been asserting laches against API's counterclaim, so it was familiar with what was required of the defense. Thus, the trial judge acted within the bounds of his discretion in allowing the claim of laches.

### 2. Elements of Laches

■■■■ Like quasi-estoppel, laches is an affirmative defense and the party asserting the defense has the burden of proof. Whether or not a party is guilty of laches is a question of fact. *Huppert v. Wolford,* 91 Idaho 249, 256, 420 P.2d 11, 18 (1966). The necessary elements to maintain a defense of laches are:

(1) defendant's invasion of plaintiff's rights; (2) delay in asserting plaintiff's rights, the plaintiff having had notice and an opportunity to institute a suit; (3) lack of knowledge by the defendant that plaintiff would assert his rights; and (4) injury or prejudice to the defendant in the event relief is accorded to plaintiff or the suit is not held to be barred.

*Henderson v. Smith,* 128 Idaho 444, 449, 915 P.2d 6, 11 (1996). (citation omitted). Because the doctrine of laches is founded in equity, in determining whether the doctrine applies, consideration must be given to all surrounding circumstances and acts of the parties. *Id.* (citation omitted). The lapse of time alone is not controlling on whether laches applies. *Id.* (citation omitted).

As to the first element of laches, payments became due under the terms of the promissory note when the federal Simplot litigation was settled. API did not make any payments to Thomas and was, therefore, in violation of his rights.

As to the second element, involving delay in asserting plaintiff's rights, the Estate did not demand payment for forty-four months after the first payment was due, and at least thirty months after Thomas apparently confirmed he was aware payment was due. Although this was short of the statute of limitations, this is not determinative with the defense of laches, and it could be held to be a sufficient delay if the other elements were met. *See Walker v. Jackson,* 48 Idaho 18, 22, 279 P. 293, 297 (1929) (finding that a five-year delay was sufficient to invoke the defense because laches, being in equity must be determined by the particular circumstances of each case).

The third element involves a lack of knowledge by the defendant that plaintiff would assert its rights. The only testimony indicating that Thomas or the Estate would not assert their rights was that of Jim and Tom regarding their telephone conversation with the IRS agent. As discussed above, that testimony was inadmissible and was properly excluded by the trial judge as hearsay to prove that Thomas had forgiven the note. Thus, this Court would have to determine that mere silence is sufficient to satisfy this element for laches to apply to the present dispute.

In *Clontz v. Fortner,* 88 Idaho 355, 359, 399 P.2d 949, 953 (1965), this Court indicated that silence alone on the part of the plaintiff was not sufficient to lead the defendant to the conclusion that the plaintiff would not assert his rights, although there were other factors in that case as well that should have lead the defendant to believe that the plaintiff would assert his rights. *See also Henderson v. Smith,* 128 Idaho 444, 449, 915 P.2d 6, 11 (1996) (finding that more than a ten-year delay in bringing a paternity support suit did not provide a lack of notice to the defendant that the plaintiff would bring suit because the defendant "had knowledge of the child and could anticipate that [the plaintiff] would assert any rights against [the defendant]").

As in *Henderson,* API knew it had an obligation to pay on the note because the federal Simplot litigation had settled, making payments under the terms of the note due and owing. Excluding the testimony of Jim and Tom regarding their conversation with the IRS agent that Thomas was not going to collect the debt, there is not substantial and competent evidence in the record to support the finding that API lacked knowledge Thomas would assert his rights.

The final element relates to the injury or prejudice suffered by the defendant. LIIC argues, and the trial judge apparently found, that API was prejudiced because rather than making the monthly payments on the note, it diverted the funds for capital improvements and operating expenses and was unable to make the back payments when demanded by the Estate. This Court has in the past been unwilling to find prejudice in similar situations where the defendant was deprived of a benefit to which he was not entitled. *See Devil Creek Ranch, Inc. v. Cedar Mesa Reservoir and Canal Co.,* 123 Idaho 634, 637, 851 P.2d 348, 351 (1993); *Mountain Home Irr. Dist. v. Duffy,* 79 Idaho 435, 443, 319 P.2d 965, 970 (1957).

There was evidence presented at trial that API enjoyed tax benefits because of its delay in paying the note, treating it as being forgiven and then having the Estate make demand for payment. The evidence simply does not support a finding that API was prejudiced by a delay in collection of the note sufficient to support the doctrine of laches. API was free to make payments on the debt as it came due, or even escrow the money in the event Thomas made demand for payment, or at a minimum, contact Thomas to determine whether he had forgiven the debt.

### 3. Laches Conclusion

There is not substantial and competent evidence in the record to hold that API met its burden of proving the elements of laches, specifically: (1) a lack of knowledge that Thomas would assert his rights; and (2) that API suffered prejudice due to a delay in the collection. Thus, the district judge erred in applying the doctrine.

### D. Unclean Hands Doctrine

As recognized by the Estate, it does not appear the trial judge ruled on the basis of

unclean hands, but rather only mentioned it one time in passing using it as a reason to apply the defenses of quasi-estoppel and laches and writing "when neither side has clean hands, equity demands middle ground." The parties did not raise the unclean hands doctrine at trial and the Estate argues it on appeal out of "an abundance of caution." We need not address it further in this opinion.

### E. Attorney's Fees on Appeal

 We award attorney's fees to the Estate against API on appeal. Although API did not file a brief in this appeal, it did file a letter with the Court in which it stated that it concurred with LIIC's brief. Therefore, API was a party to the appeal and simply chose to appear by concurring with LIIC's brief rather than filing its own. I.C. § 12–120(3) provides:

> (3) In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs.

As the prevailing party on a note, the Estate is entitled to attorney's fees under this provision. *E.g. Walter E. Wilhite Revocable Living Trust v. Northwest Yearly Meeting Pension Fund,* 128 Idaho 539, 549–50, 916 P.2d 1264, 1274–75 (1996).

 Moreover, as this Court stated in *Ayotte v. Redmon,* 110 Idaho 726, 726–27, 718 P.2d 1164, 1164–65 (1986), "[c]ontract provisions for attorney's fees ... are generally enforceable" (citations omitted). The promissory note provides in part, "[i]f default(s) occur(s) in payment of any sums due under this note ... the undersigned and any endorser/or guarantor jointly and severally agree to pay the holder all reasonable costs of collection including, but limited to, reasonable attorney's fees." Thus, attorney's fees are warranted on that basis as well. The Estate does not seek and we do not award attorney's fees against LIIC, which was not a party to the transaction.

### V. CONCLUSION

We reverse the trial judge because there is not substantial and competent evidence in the record to support the trial judge's determination that API satisfied its burden of proving the elements of the equitable defenses of equitable estoppel and laches. We remand the case to the district court for calculation of the applicable amount of interest to be awarded to API under the terms of the promissory note, and we award attorney's fees and costs on appeal to the Estate against API.

Justices SCHROEDER, WALTERS, KIDWELL and EISMANN, concur.