## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 41077

| | | |
|---|---|---|
| SHERMAN STORAGE, LLC, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Boise, January 2015 Term |
| | ) | |
| v. | ) | 2015 Opinion No. 101 |
| | ) | |
| GLOBAL SIGNAL ACQUISITIONS II, LLC, | ) | Filed: November 2, 2015 |
| | ) | |
| | ) | Stephen Kenyon, Clerk |
| Defendant-Third Party Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE WALLACE FAMILY TRUST; MARY JO WALLACE, Trustee of THE WALLACE FAMILY TRUST, | ) | |
| | ) | |
| Third Party Defendant. | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Hon. John P. Luster, District Judge.

The judgment of the district court is affirmed.

Erik P. Smith, PC, Coeur d'Alene, for appellant. Erik P. Smith argued.

Witherspoon Kelley, Coeur d'Alene, for respondent. Joel P. Hazel argued.

_____

HORTON, Justice.

Sherman Storage, LLC (Sherman) brought this action against Global Signal Acquisitions II, LLC (Global) seeking to eject Global from a strip of land and seeking contract damages and mesne profits. Sherman appeals from the district court's judgment in Global's favor and its order that Sherman pay a substantial sum for Global's attorney fees. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This dispute relates to a strip of land that is part of a cell tower site located in the City of Coeur d'Alene. The site is primarily located on Lot 4, Block 22, Glenmore Addition to Coeur

1

d'Alene (Lot 4), but it extends to the west into a vacated street right-of-way adjacent to Lot 4. The disputed strip of land is the western portion of the cell tower site that is situated on the former 24th Street right-of-way. The disputed strip extends westerly 12.33 feet into the former right-of-way and is fifty feet wide.

In 1987, Gary A. Wallace and Mary Jo Wallace established the Wallace Family Trust (the Trust). In 1988, the Trust acquired Lot 4 from the Idaho Transportation Department.[1] Lot 4 was located on the east side of 24th Street, which ran in a north-south direction. At this time, Mary Jo Wallace already owned the lots on the other side of 24th Street, having acquired Lots 1 through 12, Block 21, Glenmore Addition in 1982, when the property passed to her by inheritance upon her mother's death.

In 1989, the City of Coeur d'Alene vacated the portion of 24th Street between Lots 1 and 12, Block 21 on the west and Lots 3 and 4, Block 22 on the east. By operation of law,[2] the lots on each side of 24th Street re-acquired the adjoining half of the vacated right-of-way. Thus, a portion of 24th Street right-of-way, including the entirety of the disputed strip, reverted to Lot 4. The strip is located in the vacated right-of-way on the edge of the former 24th Street, but it is not located on the former roadway.

In June of 1996, the Trust agreed to lease property to Sprint Spectrum L.P. (Sprint) for a cell tower site in a document entitled PCS Site Agreement (the PSA).[3] The PSA stated that the lease was for approximately 2,500 square feet of land along with an access easement. The PSA provided that the lease was for the site "shown on Exhibit A." Exhibit A depicted the site as a trapezoid. The west boundary line of the site is shown as located 17 feet from the centerline of 24th Street and running adjacent to, and parallel to, 24th Street for 50 feet. The north boundary line of the site is shown as extending 35 feet east from the northern terminus of the west boundary line (on the east edge of 24th Street) at a 90 degree angle. The south boundary line is

---

[1]  The Trust acquired Lot 3, Block 22, Glenmore Addition to Coeur d'Alene at the same time (Lot 3).
[2]  Idaho Code section 50-311 provides in pertinent part:
> [W]henever any street, avenue, alley or lane shall be vacated, the same shall revert to the owner of the adjacent real estate, one-half ( ½ ) on each side thereof, or as the city council deems in the best interests of the adjoining properties, but the right of way, easements and franchise rights of any lot owner or public utility shall not be impaired thereby.

The city ordinance vacating 24th Street did not provide an alternate allocation of ownership, as it simply stated that the "vacated property shall revert to the adjacent property owners."
[3]  After the cell tower was constructed, multiple amendments and agreements were executed over the years, including agreements to co-locate other providers, agreements affirming the location of the cell tower site, and an agreement to extend the lease term until 2041.

likewise shown as a perpendicular line from the edge of 24th Street, extending 50 feet east from the southern terminus of the west boundary line on the east edge of 24th Street. The east boundary line is depicted as a straight line, running southeast from the eastern terminus of the north boundary line to the eastern terminus of the south boundary line.

Although the PSA described the lease site as being "shown on Exhibit A," the PSA also provided that "[i]f requested by [Sprint], [the Trust] agrees promptly to execute and deliver to [Sprint] a recordable Memorandum of this Agreement in the form of Exhibit B. . . ." The PSA explicitly and repeatedly provided that the attached exhibits were part of the parties' agreement.

Sprint evidently requested the Trust to execute a memorandum of their agreement, as Exhibit B is attached to the PSA. Unfortunately, the description of the lease site in Exhibit B differs from that in Exhibit A. Although Exhibit B states that the lease site is "within the property of [the Trust] which is described in Exhibit A," it also contains the contradictory statement that the leased premises are "east of and adjacent to the abandoned 24th St. right of way. . . ." The genesis of this litigation lies in these differing descriptions, as the eastern boundary of the abandoned 24th Street right of way is 30 feet from the centerline of 24th Street, not the 17 feet depicted in Exhibit A.

In the summer of 1996, Sprint constructed the cell tower and fenced in approximately a 35' x 35' fenced square area directly adjacent to the curb of 24th Street. Although the size of the fenced-off area has increased over the years, it has not exceeded the area described in Exhibit A to the PSA and the western fence has not moved from its location adjacent to the curb of 24th Street.[4] On January 31, 1997, Sprint recorded a Record of Survey "for the purpose of

---

[4] The location of the western fence line was a critical fact in dispute. Sherman challenges the district court's factual finding that "[t]he location of the Cell Tower Site has not changed since originally built, though fencing and access has changed, resulting in a 40' x 40' enclosure." Although Sherman is correct that the aspects of the site changed over time, the critical inquiry is whether the disputed strip was bounded at the time of the original construction of the cell tower site. We view the district court's statement as addressing this claim.

We have carefully examined Sherman's citations to the record on this critical point and compared them with those relied upon by Global. Although some of Sherman's citations do not support its claim that the fence was relocated, Sherman does correctly direct us to significant testimony in support of its position. In Mary Jo Wallace's deposition testimony, she twice testified that she had seen the cell tower site following its construction in 1996 and that there was a significant gap between the 24th Street curb and the fence on the western boundary of the cell tower site. Wallace estimated the gap as "almost a car's width." Global presented conflicting evidence, including a survey performed shortly after the site was constructed, to show that the western fence was constructed adjacent to the 24th Street curb and that its location had not changed. As it is the district court's role, not ours, to weigh conflicting evidence and judge witness credibility, *State, Dep't of Transp. v. Grathol*, 158 Idaho 38, 45, 343 P.3d 480, 487 (2015), we accept the trial court's finding that the western boundary of the cell tower site was unchanged.

monumenting" the lease site. The survey showed the lease site as occupying a portion of the 24th Street right-of-way.

In August of 2002, Mary Jo Wallace entered into an agreement to sell Lots 1-12 in Block 21 to Sherman's predecessor in interest, Sherman Self Storage Inc. (Sherman Inc.). The agreement described the property to be purchased, in pertinent part, as including "vacated roadways all of 24th St. (60')," despite the fact that the eastern half of 24th Street had reverted to Lots 3 and 4, owned by the Trust. On September 19, 2002, Mary Jo Wallace executed a warranty deed conveying Lots 1-12 in Block 21 along with "vacated 24th Street, that attached by operation of law," which had the effect of conveying the western half of the vacated 24th Street. The differing descriptions found in the sales agreement and the warranty deed also contributed to the instant controversy.

On June 7, 2005, Sprint assigned its interest in the lease to Global as part of a transaction wherein Global's parent company acquired approximately 10,000 cell tower sites. On April 7, 2006, by way of warranty deed, Sherman Inc. transferred to Sherman Lots 1-12, Block 21 and "those portions of . . . vacated 24th Street, that attaches [sic] by operation of law." On June 7, 2006, Sherman Inc. quitclaimed its interest in the east half of 24th Street to Sherman.

This appeal relates to two cases before the district court. In 2003, Sherman Inc. brought an action against Mary Jo Wallace, individually (the 2003 Litigation). In this action, Sherman Inc. sought to quiet title in the east half of the vacated 24th Street right-of-way, including the strip of land at issue in this appeal. In 2006, Sherman Inc. and Mary Jo Wallace entered into a settlement agreement. Notwithstanding the fact that the Trust owned Lots 3 and 4, Wallace agreed to transfer her interest in the east half of the vacated 24th Street to Sherman Inc. In turn, Sherman Inc. agreed that Wallace would "have an easement to access the existing cell tower on her remaining property consistent with the existing easement for that purpose, as set forth [in the 1997 Record of Survey.]" The district court entered a final order quieting title to the east half of 24th Street in Sherman Inc.'s favor as against Mary Jo Wallace.

On May 19, 2009, Sherman filed an action against Global, seeking to eject Global from the disputed strip (the 2009 Litigation). Global moved for summary judgment, seeking dismissal of Sherman's action because the Trust, not Sherman, held title to the east half of 24th Street. Thereafter, the Trust conveyed "the easterly ½ of vacated 24th Street" to Sherman by warranty deed. No money changed hands in this transaction. In May of 2010, Sherman purchased Lots 3

4

and 4 from the Trust for $300,000. Following this purchase, Sherman amended its complaint to add claims for mesne profits and breach of the PSA.

The district court subsequently consolidated the 2003 and 2009 Litigation. The district court granted partial summary judgment in favor of Sherman, holding that the PSA unambiguously established that "the lease site is to the east of and adjacent to the abandoned 24th Street right of way."[5] The district court conducted a trial without jury starting on June 4, 2012. The district court then issued a memorandum decision, finding in favor of Global.

The district court made a number of conclusions of law; however, there are three that are dispositive of Sherman's appeal from the district court's decision that it was not entitled to relief. First, the district court found that Sherman's action for ejectment was barred by laches. Second, although the district court determined that Sherman's contract action failed for other reasons, it held that "[e]ven if Sherman successfully proved its claims . . . Sherman did not prove that it is entitled to damages." Finally, the district court denied Sherman's claim for mesne profits on the basis that Sherman failed to prove "Global's profits derived from the subject property." The district court thereafter found that Global was the prevailing party and awarded $9,846.80 in costs and $250,000 in attorney fees. Sherman timely appealed. After Global undertook to collect on the judgment for attorney fees and costs, Sherman paid those sums rather than post a supersedeas bond.

## II. STANDARD OF REVIEW

This Court reviews a district court's decision following a bench trial to ascertain "whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law." *Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009). "Since it is the province of the trial court to weigh conflicting evidence and testimony and to judge the credibility of witnesses, this Court will liberally construe the trial court's findings of fact in favor of the judgment entered" and "will not set aside a trial court's findings of fact unless the findings are clearly erroneous." *Id.* "This Court exercises free review over matters of law." *Id.*

"We review a trial court's decision on laches and unclean hands for an abuse of discretion." *Garcia v. Pinkham*, 144 Idaho 898, 899, 174 P.3d 868, 869 (2007). "Abuse of

---

[5] This grant of partial summary judgment was clearly erroneous. The conflicts between Exhibits A and B to the PSA render the PSA ambiguous as to the location of the lease site. Despite this error, the decision of the district court may be affirmed without necessity of a remand.

5

discretion is determined by a three part test which asks whether the district court '(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) reached its decision by an exercise of reason.' " *Id.* (quoting *Sun Valley Potato Growers, Inc. v. Texas Refinery Corp.*, 139 Idaho 761, 765, 86 P.3d 475, 479 (2004)). The award of attorney fees is also reviewed for an abuse of discretion. *Taylor v. Maile*, 146 Idaho 705, 712, 201 P.3d 1282, 1289 (2009).

## III. ANALYSIS

Although the parties raise a number of issues on appeal relating to the merits of the district court's rejection of Sherman's claims, we find three issues to be dispositive. For that reason, we will only address the following issues relating to Sherman's claims for relief: (1) the district court's decision that laches barred Sherman's equitable action for ejectment; (2) the district court's determination that Sherman failed to prove contract damages; and (3) the district court's determination that Sherman failed to prove mesne profits. We then turn our attention to the district court's award of attorney fees and costs to Global. Finally, we consider the parties' requests for attorney fees incurred on appeal.

### A. The district court did not abuse its discretion when it found that laches barred Sherman's ejectment claim.

The district court determined that Sherman was estopped by laches from ejecting Global from the disputed strip because the Trust failed to bring a claim between 1996 and 2010. Sherman argues that the district court should have denied Global its equitable defense because it has unclean hands and that the district court erred in applying estoppel by laches because Global failed to prove that the Trust knew of the encroachment.

"The clean hands doctrine 'stands for the proposition that a litigant may be denied relief by a court of equity on the ground that his conduct has been inequitable, unfair and dishonest, or fraudulent and deceitful as to the controversy in issue.' " *McVicars v. Christensen*, 156 Idaho 58, 63–64, 320 P.3d 948, 953–54 (2014) (quoting *Ada Cnty. Highway Dist. v. Total Success Invs., LLC*, 145 Idaho 360, 370, 179 P.3d 323, 333 (2008) (citation omitted)). An appellant bears the burden of showing the district court committed error, the "[e]rror must be affirmatively shown on the record," and "[i]f the record is inadequate to review the appellant's claims, the Court will not presume error below." *Garcia*, 144 Idaho at 899, 174 P.3d at 869.

6

The district court implicitly rejected Sherman's unclean hands argument by applying laches.[6] "In such instances, we will examine the record to determine whether there is substantial and competent evidence to support the district court's implicit factual findings." *Borah*, 147 Idaho at 80, 205 P.3d at 1216. The district court's factual findings are owed deference unless clearly erroneous. *City of Idaho Falls v. Fuhriman*, 149 Idaho 574, 576, 237 P.3d 1200, 1202 (2010). "It is not this Court's role to reweigh evidence." *Frontier Dev. Grp., LLC v. Caravella*, 157 Idaho 589, 595, 338 P.3d 1193, 1199 (2014).

Sherman argues that Global and its predecessor, Sprint, engaged in a pattern of "duplicitous conduct" designed to avoid providing the Trust notice of the encroachment on the 24th Street right-of-way. However, the district court found that Mary Jo Wallace viewed the cell tower site following its construction in 1996. Thereafter, the Trust signed additional agreements regarding the site, accepted rental payments and extended the term of the PSA.

There is substantial evidence supporting the district court's finding that the Trust had knowledge of the encroachment. Mary Jo Wallace testified that she saw the site following its construction, although the district court's findings indicate that she was mistaken as to the original location of the western fence. There was substantial evidence that the location of the western fence remained unchanged following the construction at the cell tower site. Global introduced a 1996 construction drawing depicting a 35' x 35' square, surrounded by a six foot high fence that occupied a portion of the 24th Street right-of-way. On January 31, 1997, Sprint recorded a Record of Survey "for the purpose of monumenting a lease site" in Kootenai County. This Record of Survey, prepared by professional land surveyor Doug Black, depicted the lease site as occupying a portion of the 24th Street right-of-way. Randy LaBeff, the engineer who drafted the construction drawings for the cell tower site, testified that it was to be constructed adjacent to the 24th Street curb and he was "as confident as you can be" that his construction plans called for the lease site to be placed as located by Black's site survey. LaBeff further testified that the cell tower site was built in a location consistent with the plans he drew up. Another surveyor, Walter Dale, testified that he found Black's original survey monuments that

---

[6] It is not surprising that the district court did not explicitly refer to "unclean hands." Apart from noting that Global asserted that Sherman had unclean hands, Sherman did not use the words in its trial brief or proposed findings of fact and conclusions of law. Indeed, Sherman's Notice of Appeal contains its first explicit written reference to "unclean hands" on the part of Global.

We view Sherman's claims that Global acted "duplicitously" and "deceitfully" in its dealings with the Trust as the basis for its claim that Global had unclean hands. Thus, we focus on the district court's factual finding that the Trust had knowledge of the encroachment.

were placed in 1996 and that the lease site was 17.7 feet from the centerline of 24th Street in accordance with Black's original survey.

The district court found that Sherman was barred by laches based upon the information possessed by the Trust and its dealings with Sprint and Global. Sherman does not challenge the proposition that the conduct of a predecessor in interest may result in the application of laches.[7] Given that Sherman purchased the property in question in the course of this litigation with full notice of the encroachment, we can discern no error in the district court's focus on the Trust's knowledge of the encroachment and subsequent conduct.

We have described the doctrine of laches as follows:

> [L]aches is an affirmative defense and the party asserting the defense has the burden of proof. Whether or not a party is guilty of laches is a question of fact. The necessary elements to maintain a defense of laches are:
>
> > (1) defendant's invasion of plaintiff's rights; (2) *delay in asserting plaintiff's rights, the plaintiff having had notice and an opportunity to institute a suit*; (3) lack of knowledge by the defendant that plaintiff would assert his rights; and (4) injury or prejudice to the defendant in the event relief is accorded to plaintiff or the suit is not held to be barred.
>
> Because the doctrine of laches is founded in equity, in determining whether the doctrine applies, consideration must be given to all surrounding circumstances and acts of the parties. The lapse of time alone is not controlling on whether laches applies.

*Thomas v. Arkoosh Produce, Inc.*, 137 Idaho 352, 359, 48 P.3d 1241, 1248 (2002) (citations omitted).

Distilled to its essence, Sherman's challenge is predicated upon Mary Jo Wallace's recollection of the location of the western fence. The district court's finding that she had seen the site following its construction and that the location was unchanged was based upon substantial evidence. The district court, not surprisingly, found it significant that, despite the Trust's

---

[7] The district court cited *Almo Water Co. v. Darrington*, 95 Idaho 16, 501 P.2d 700 (1972), as a case where this Court considered whether the conduct of predecessors would result in laches being applied to bar a successor's water claim. However, the *Almo* Court did not decide whether laches may apply to a party based upon its predecessor's conduct because it found that there was no reliance on the earlier conduct. *Id.* at 20, 501 P.2d at 704. Other Idaho cases have likewise suggested, without explicitly holding, that a predecessor's conduct may result in laches being applied to a successor. *See e.g. Devil Creek Ranch, Inc. v. Cedar Mesa Reservoir & Canal Co.*, 123 Idaho 634, 635–36, 851 P.2d 348, 349–50 (1993); *Argyle v. Slemaker*, 107 Idaho 668, 669–70, 691 P.2d 1283, 1284–85 (Ct. App. 1984); *see also Infanger v. City of Salmon*, 137 Idaho 45, 52, 44 P.3d 1100, 1107 (2002) (Kidwell J., dissenting) (stating cases from other jurisdictions "hold that successors in interest may be estopped by the actions of their predecessors, at least where the successor had notice of the facts giving rise to the estoppel.").

knowledge of the actual location of the cell tower cite, the Trust entered into additional agreements[8] and continued to accept rental payments[9] without objection.

The district court explicitly recognized that whether to apply laches was committed to its discretion. Citing to *Thomas*, the district court correctly articulated the legal standards governing a claim of laches. The district court's decision to apply laches was within the bounds of its discretion. The district court cogently articulated its reason for finding that each of the four elements of laches had been established. Sherman has not shown that the district court abused its discretion.

**B. There is no ground for reversing the district court's rejection of Sherman's claim for breach of contract because Sherman has not challenged the district court's finding that it had failed to establish contract damages.**

Sherman devotes much briefing to its claim that the district court erred in finding that there was no material breach of the PSA. However, "where a judgment of the trial court is based upon alternate grounds, if the judgment can be affirmed on one of the grounds the fact that the alternative ground may have been in error is of no consequence and may be disregarded." *Fischer v. Fischer*, 92 Idaho 379, 382, 443 P.2d 463, 466 (1968).

The district court held that "[e]ven if Sherman successfully proved its claims, which it did not, Sherman did not prove that it is entitled to damages." As the plaintiff, Sherman bore the burden of proving the damages occasioned by Global's purported breach of contract with reasonable certainty. *Harris, Inc. v. Foxhollow Const. & Trucking, Inc.*, 151 Idaho 761, 770, 264 P.3d 400, 409 (2011). Sherman has not challenged the district court's finding that it did not prove contract damages. The failure to do so is fatal to its claim that the district court erred by denying it relief for breach of contract. *La Bella Vita, LLC v. Shuler*, 158 Idaho 799, 806, 353 P.3d 420, 427 (2015) (failure to address alternative ground for summary judgment fatal to appeal).

---

[8] Two agreements are particularly noteworthy. On May 10, 2005, the Trust signed an Estoppel Certificate that agreed:

> No default exists under the Lease on the part of Tenant, and, to Landlord's knowledge, no event or condition has occurred or exists which, with notice or the passage of time or both, would constitute a default by Tenant under the Lease.

On November 17, 2008, in exchange for a signing bonus, the Trust entered into an agreement to extend the lease term to 2041.

[9] Between 1996 and 2010, the Trust accepted rental payments totaling $172,786.40.

9

**C. The district court's rejection of Sherman's claim for mesne profits must be affirmed because Sherman has not challenged the district court's determination that it failed to prove mesne profits.**

"Mesne profits is most often defined as the value of the use or occupation of the land during the time it was held by one in wrongful possession and is commonly measured in terms of rents and profits." *Dumas v. Ropp*, 98 Idaho 61, 62, 558 P.2d 632, 633 (1977). The district court held that "Sherman did not establish Global's profits derived from the subject property." Sherman has not challenged this conclusion on appeal. Accordingly, we affirm the district court's denial of Sherman's claim for mesne profits.

**D. The district court's award of attorney fees and costs to Global is affirmed.**

The district court awarded Global $9,846.80 in costs and $250,000 in attorney fees pursuant to the terms of the PSA and Idaho Code section 12-120(3). On appeal, Sherman argues the district court's award of attorney fees and costs should be vacated. Before turning to the merits of this claim, we first consider Global's contention that Sherman waived this issue when it paid the judgment for attorney fees.

Generally, the satisfaction of a judgment may terminate the right to appeal from the judgment. *People ex rel. Neilson v. Wilkins*, 101 Idaho 394, 396, 614 P.2d 417, 419 (1980). However, if satisfaction of the judgment is involuntary, the right to appeal is not lost. *In re SRBA*, 149 Idaho 532, 538 n. 1, 237 P.3d 1, 7 n. 1 (2010); *Int'l Bus. Machs. Corp. v. Lawhorn*, 106 Idaho 194, 197, 677 P.2d 507, 510 (Ct. App. 1984). Thus, when a party pays an award to avoid a sheriff's sale, the satisfaction of the judgment is involuntary and the issue is still ripe for judicial review. *In re SRBA*, 149 Idaho at 538 n. 1, 237 P.3d at 7 n. 1. Here, Sherman's payment of attorney fees and costs was involuntary. Thus, we may consider the merits of this issue.

"The award of attorney fees rests in the sound discretion of the trial court and the burden is on the person disputing the award to show an abuse of discretion." *Idaho Military Historical Soc'y, Inc. v. Maslen*, 156 Idaho 624, 631, 329 P.3d 1072, 1079 (2014) (quoting *Nampa & Meridian Irr. Dist. v. Washington Fed. Sav.*, 135 Idaho 518, 525, 20 P.3d 702, 709 (2001)). "[I]ssues that are not argued and supported as required by the Appellate Rules are deemed to have been waived." *Bettwieser v. New York Irr. Dist.*, 154 Idaho 317, 326, 297 P.3d 1134, 1143 (2013). The Idaho Appellate Rules provide: "The argument shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to authorities, statutes and parts of the transcript and the record relied upon." I.A.R. 35(a)(6).

10

Sherman's brief states: "For Sherman's analysis on the issues and basis for the attorney's fees claim, please see Sherman's 'Memorandum in Support of Objection to Attorney's Fees and Costs.' " The citation to a memorandum filed in the district court falls well short of the requirement that a party support a claim of error with argument and authority. We therefore affirm the district court's award of attorney fees and costs.

**E. Global is entitled to attorney fees on appeal.**

Global requests attorney fees on appeal under the terms of the PSA and Idaho Code section 12-120(3). "Attorney fees may be awarded if authorized by statute or contract." *Stibal v. Fano*, 157 Idaho 428, 435, 337 P.3d 587, 594 (2014). The PSA provides the following contractual basis for an award of attorney fees:

> The prevailing party in any action or proceeding in court . . . to enforce the terms of this Agreement is entitled to receive its reasonable attorneys' fees and other reasonable enforcement costs and expenses from the non-prevailing party.

As the prevailing party, Global is entitled to an award of attorney fees on appeal.

## IV. CONCLUSION

We affirm the district court's judgment in favor of Global and its award of attorney fees and costs. We award attorney fees and costs on appeal to Global.

Chief Justice J. JONES and Justices EISMANN, BURDICK and W. JONES **CONCUR**.